In the Matter of the Application of JOSEPH EUGENE TUCKER and CLARENCE HUBERT LIVINGSTON, for the Payment to Them of Part of the Accumulations on Moneys Deposited as Award to Unknown Owners, in a Proceeding Entitled TUCKER *v.* BINGAMAN, in the Matter of the Department of Public Works, for and in Behalf of the Mayor, etc., of the City of New York, Relative to Acquiring Title to Two Public Parks or Places on the East River, etc.

JOSEPH EUGENE TUCKER and CLARENCE HUBERT LIVINGSTON, Appellants; THE CHAMBERLAIN OF THE CITY OF NEW YORK, Respondent.

First Department, May 2, 1919.

**Decedent's estate — acceptance by life tenant of gross sum in lieu of annual income releases all claims to accumulations.**

Where a life tenant, represented in a condemnation proceeding by an attorney, after being informed that he could receive the annual income from an award or a gross sum at the value of his life estate, accepted the latter under section 85 of the General Rules of Practice (1874), and the report was confirmed and no appeal taken therefrom, he released all claims to any accumulations by way of income on the fund.

APPEAL by the petitioners, Joseph Eugene Tucker and another, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 11th day of December, 1918, denying their application to be paid certain moneys deposited with the city chamberlain.

*James Dunne,* for the appellants.

*Joel J. Squier* of counsel [*William P. Burr, Corporation Counsel*], for the respondent.

PAGE, J.:

The city of New York, in 1875, instituted a proceeding to acquire title to land bounded by Eighty-fourth street on the south, Eighty-sixth street on the north, Avenue B on the west and the East river on the east, for the purpose of establishing public parks.

This property was vested in Robert Swift Livingston, who died February 25, 1867, leaving a last will and testament, whereby he devised the property to his son Clarence Hubert Livingston for life and at his death to his issue if he should die leaving issue, and if he should die without issue same should go to the testator's daughters and his son Robert Francis Livingston in fee simple. Commissioners of estimate and assessment were appointed by the Supreme Court and made a report to said court March 29, 1876, wherein an award was made for the real property taken in the sum of $180,947, payable as follows:

To Clarence Hubert Livingston fifty-seven per cent and fifty-six one-hundredths of one per cent of the award; to Clara O. L. Tucker eleven per cent and five hundred and twelve one-thousandths of one per cent of the award; to unknown owners thirty per cent and nine hundred and twenty-eight one-thousandths of one per cent.

This report was duly confirmed by an order of the Supreme Court entered April 1, 1876. The amount of the respective shares payable to the parties named would amount to: Clarence Hubert Livingston, $104,153.08; Clara O. L. Tucker, $20,830.64, and to unknown owners, $55,963.28.

The share of Clarence Hubert Livingston represented five-sixths of the then present worth of his interest as a life tenant under the will of his father, Robert Swift Livingston, in the lands acquired. The share of Clara O. L. Tucker represents a one-sixth interest of the then present worth of Clarence Hubert Livingston's interest as life tenant in the land acquired. This one-sixth interest was assigned to her by her brother, Clarence Hubert Livingston.

On August 8, 1876, Clarence Hubert Livingston executed a release to the mayor, aldermen and commonalty of the city of New York of his interest in the award on payment to him by the comptroller of the above-mentioned sum of $104,153.08. The amount deposited to unknown owners with the accumulated interest thereon amounted on July 25, 1918, to $221,924.83. The petitioners, Clarence Hubert Livingston and Joseph Eugene Tucker, who succeeded to his mother's one-sixth interest in the life estate of said Livingston, petitioned the court, asking for an order directing that all accumulations

accrued since February 20, 1877, in excess of $180,947, the amount of the original award, and any and all increases or incomes hereafter, and until the death of Clarence Hubert Livingston, be paid to Clarence Hubert Livingston five-sixths and to Joseph Eugene Tucker one-sixth.

The theory on which this proceeding seems to be based is that the original award of the value of the life estate to the petitioner Livingston was wholly unauthorized and that the whole amount of the $180,947 should have been invested and the income thereof paid to him for life.

This contention is not well founded. Rule 85 of the General Rules of Practice of 1874,* which was in force at the time of this proceeding, provided: " Whenever a party, as a tenant for life, or by the curtesy, or in dower, is entitled to the annual interest or income of any sum paid into court and invested in permanent securities, such party shall be charged with the expense of investing such sum, and of receiving and paying over the interest or income thereof; but if such party is willing, and consents to accept a gross sum in lieu of such annual interest or income for life, the same shall be estimated according to the then value of an annuity of six per cent. on the principal sum, during the probable life of such person, according to the Portsmouth or Northampton tables."

The petitioner Livingston was represented in said proceeding by an attorney and the award was made in the form in which it was on his application after it had been explained to the petitioner that he could receive the income from the fund or he could obtain a gross sum as the value of his life estate. The report was confirmed and no appeal was taken therefrom. The theory on which a life tenant is allowed to receive a gross sum is that such sum represents the income that he would receive during the estimated existence of his life and the accumulations on the remainder go to pay back the money advanced out of the principal to re-establish the trust fund. If the life tenant dies before the time of his life expectancy, the remaindermen receive a less amount than the principal of their fund, and of course if the life tenant

_____

* Now General Rules of Practice, rule 70, as amended October 24. 1905.— [REP.

lives longer than his expectation of life the remainder is increased by that much. When the life tenant accepted a sum certain in lieu of his right to an annual income from the property he released all claims to any accumulations by way of income on the fund. The sole grievance that the petitioner seems to have is that having lived longer than his life expectancy he did not obtain as good a bargain as he thought he did when the same was made. He wishes now to restore the fund to the original amount and to receive the accumulations above that amount and to restore himself to his position as life tenant.

This cannot be done. He made his election which has been confirmed by an order of the court and he must abide by it.

The order will be affirmed, with costs.

CLARKE, P. J., LAUGHLIN, SHEARN and MERRELL, JJ., concurred.

Order affirmed, with costs.