EDWARD J. FLYNN, AS CHAMBERLAIN OF THE CITY OF NEW YORK, PROPOSED TO BE ASSESSED BY THE FEDERAL INCOME TAX BUREAU UNDER THE FICTITIOUS NAME OF CITY CHAMBERLAIN ACTING IN CAPACITY OF TRUSTEE FOR THE REMAINDERMEN U/W ROBERT SWIFT LIVINGSTON, ROOM 860, MUNICIPAL BUILDING, NEW YORK, N. Y., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 31214. Promulgated January 22, 1931.

*J. Marvin Haynes, Esq.,* and *Henry Bennett Leary, Esq.,* for the petitioner.

*W. R. Lansford, Esq.,* for the respondent.

#### OPINION.

MURDOCK: The Commissioner determined the following deficiencies against " City Chamberlain, Acting in Capacity of Trustee for Remaindermen, u/w Robert Swift Livingston, Room 860 Municipal Building, New York, New York ":

| Year | Deficiency | Year | Deficiency | Year | Deficiency |
|------|-----------|------|-----------|------|-----------|
| 1913 | $44.75 | 1918 | $77.57 | 1923 | $556.24 |
| 1914 | 46.45 | 1919 | 59.86 | 1924 | 483.37 |
| 1915 | None. | 1920 | 9,624.13 | 1925 | 386.99 |
| 1916 | None. | 1921 | 811.73 | | |
| 1917 | 29.02 | 1922 | 715.74 | | 12,835.85 |

The principal points urged by the petitioner are (1) that he is not a taxable person, and (2) the amounts received were not taxable income. A brief summary of the facts which have been stipulated will suffice here.

Robert Swift Livingston died on February 25, 1867. He owned certain land in the City of New York at the time of his death, which under his will, probated in New York County on March 19, 1867, was devised to his son, Clarence Hubert Livingston, for life, remainder in fee to his issue living at the time of his death. Clarence Hubert Livingston assigned one-sixth part of his life interest in this land to his sister, Clara O. Livingston Tucker. Subsequently, this land was condemned and taken by the "Mayor, Aldermen and Commonalty of the City of New York" in connection with the creation of certain parks. The Commissioners of Estimate and Assessment made awards for the taking of this land, which were duly confirmed by the Supreme Court of the County of New York by an order dated April 1, 1876. The total award was $180,947, but the court directed that this should be divided and 57.56 per cent thereof given to Clarence Hubert Livingston, 11.512 per cent given to Clara O. L. Tucker, and 30.928 per cent should belong to persons then unknown. On August 8, 1876, the Mayor, Aldermen and Commonalty of the City of New York paid to Clarence Hubert Livingston $104,153.08 in full payment and satisfaction of his share of the award and received from him a complete release. On July 8, 1876, the Mayor, Aldermen and Commonalty of the City of New York paid $20,830.64 to Clara O. L. Tucker in full payment and satisfaction of her share of the award and received her release. There was then set aside for unknown owners $55,963.28, which was paid by the Comptroller of the City of New York to the Clerk of the Supreme Court, New York County. On February 17, 1877, that court ordered that certain amounts totaling $4,961.11 should be taken out of the fund of $55,963.28 and then ordered the clerk of the court to "pay the balance of said fund remaining in his hands to the Chamberlain of the City of New York, to be by him invested for the benefit of whomsoever under the Will of Robert Swift Livingston on the death of his son, Clarence H. Livingston, shall be found, on the further order of" the "Court to be entitled to receive distribution thereof, or until otherwise ordered by" the "Court," and further directed "that the said Chamberlain collect and receive the interest on all such investments, and add the same to the principal from time to time for accumulation so long as the said fund shall remain in his hands." Pursuant to this order, the Clerk of the Supreme Court of the County of New York paid $51,002.17 to the Chamberlain of the City of New York. This fund was invested and has been reinvested from time to time by the Chamberlain of the City of New York, and he has collected and received interest on the investments, and has added the collections to the principal. This fund, with its additions, he has held continuously and now holds for future distribution.

The deficiencies in this case result from the determination of the Commissioner to tax the increment of this fund.

The Supreme Court of the County of New York has held that the award of $180,947 was made for the value of the entire fee of the land taken, and that the portions paid to the life tenant and his assignee represented the full value of the life estate according to mortality tables, and the $51,002.17 was the value of the fee released of the life estate and diminished by the sum of $4,961.11 which was paid out for expenses.

Clarence Hubert Livingston died on October 30, 1928, and left as his only surviving issue one son, Clarence Carey Livingston. In 1918, Joseph Eugene Tucker, as successor to the rights, if any, of Clara O. L. Tucker, applied to the Supreme Court of the County of New York for an order directing the Chamberlain of the City of New York to pay to them all the accumulations on the fund of $51,002.17 over and above the amount necessary to restore such fund to the amount of $180,947, the aggregate amount of the original award in condemnation. This application was denied and the denial was affirmed by the Appellate Division (187 App. Div. 502) and by the Court of Appeals of the State of New York (228 N. Y. 505).

In 1927, George B. Ackerly, claiming to be an assignee of Clarence Hubert Livingston, asked the Supreme Court of New York County to determine the income that had accrued on the fund of $51,002.17 and order that the Chamberlain of the City of New York pay to Ackerly, as assignee of Clarence Hubert Livingston, his share in the income that had so accrued. The court sent the matter to a referee, whereupon the Chamberlain of the City of New York and others appealed from the order appointing the referee, and the Appellate Division (223 App. Div. 872) reversed the order appointing the referee and denied Ackerly's motion on the authority of *Matter of Tucker*, 187 App. Div. 502; affd., 228 N. Y. 505. No litigation is now pending which would affect the holdings of the New York courts above mentioned relating to this matter. No returns reporting the income in question in this case have ever been filed, and no income taxes have ever been paid in this connection.

This Board has no jurisdiction as to the deficiencies determined for the years 1913 and 1914. *David B. Mills*, 1 B. T. A. 199; *Lancaster Lens Co.*, 10 B. T. A. 1153. The filing of a return is not a prerequisite to the determination or assessment of a deficiency. *Henry R. Fishel et al.*, 14 B. T. A. 87; *United Business Corporation of America et al.*, 19 B. T. A. 809.

The petitioner contends that he is not a taxable person and in support of this contention states that he is a custodian of a court

fund rather than a fiduciary for any person; he is expressly exempt from the duty of filing returns by the provision of the law that no return need be filed by " a receiver appointed by authority of the law in possession of part only of the property of an individual "; and, as in any event he can make no payment out of this fund without the order of the Supreme Court of the County of New York, an adverse decision of the Board will be an anomaly. Section 2 (b) of the Revenue Act of 1916 (see also similar provisions in later acts) provides that the tax shall apply to the income of any kind of property held in trust including " income accumulated in trust for the benefit of unborn or unascertained persons, or persons with contingent interests." The respondent argues that this provision specifically covers the case before us; the exercise of a strictly governmental function ceased when the fund was turned over to the Chamberlain, since the City of New York had then paid for the property which it had taken and the source of the fund was no longer significant; the court might have appointed a private citizen or a trust company trustee to collect this interest and hold and invest the fund; the City Chamberlain, under the supervision of a court, was merely acting as a trustee for a private person, the unknown remainderman; and the Chamberlain, in this instance a " taxable person " was taxable on this income which was no different from ordinary income.

A remainderman's interest would have no significance were it not for the existence of a sovereign government and its laws, and generally a remainderman can not complain if his interest is required to bear its proportionate share of the expenses of government. In our opinion the exception provided in section 225 (a) of the Revenue Act of 1926 and earlier acts does not apply in this case, but the above quoted provision of section 2 (b) of the Revenue Act of 1916 and similar provisions in later acts do apply and the petitioner is a taxable person as contended by the respondent. Cf. *United States* v. *Railroad Co.*, 17 Wall. 322. The petitioner is not like the Alien Property Custodian, because the latter did not hold property in trust. The Custodian held the property for the United States, which could make such use of it as Congress might direct.

It is true that if the testator, instead of leaving land, had left a fund of $180,947 to his son for life, remainder in fee to the latter's issue living at the time of his death, under present law the remainderman would have gotten the entire fund at the death of the life tenant undiminished by income tax. The same would be true if the court had ordered that the entire fund be held by the City Chamberlain or some other, the income paid to the life tenant during his life and

at his death the principal paid to the remainderman. But we must deal with the different situation which is before us. The court adopted a method which it thought would produce an equitable result. but it is immaterial to a decision in this case that at the death of the life tenant the remainderman will not get all that the court probably contemplated he would get. Our function is to interpret the Revenue Act and to follow its terms even though to do so should render inequitable that which a court has decided would produce equity.

The petitioner's next contention is in effect that the whole scheme of the court in dividing the total award by the use of mortality tables was merely a convenient method used by the State court to acquire and produce the principal sum necessary to compensate the remainderman and the accretions to that fund are not income to any one. But this income fits into the definition of income which has been adopted by the Supreme Court of the United States in *Eisner* v. *Macomber*, 252 U. S. 189, and consistently used by that court. Cf. *Merchants Loan & Trust Co.* v. *Smietanka*, 255 U. S. 509.

> *An order of dismissal will be entered for the years 1913 and 1914. Judgment will be entered for the respondent for the years 1917 to 1925, inclusive.*