STODDARD v. EATON, Collector of Internal Revenue.

District Court, D. Connecticut.   October 8, 1927.

No. 3035.

Internal revenue ☞7(19)—Losses on sale of securities, transferred in trust, but withdrawn, held deductible from personal income of donor (Revenue Act 1918, § 219 [Comp. St. § 6336⅛ii]).

Plaintiff, by trust instruments, transferred securities described in schedules attached to trustees with power to sell and reinvest, to collect the income and pay the same to plaintiff and his wife, but reserving the right to withdraw any of the securities and to terminate the trust at will. Under these instruments all sales of securities and reinvestments were either made or directed by plaintiff, the proceeds of sales being paid in some cases to him and in some to the trustees. *Held*, that the sales were not of trust property within Revenue Act 1918, § 219

(Comp. St. § 6336⅛ii); that title to the securities, when sold, was not in the trustees but in plaintiff, who was entitled to deduct losses on the sales from his gross personal income.

At Law. Action by Henry Stoddard against Robert O. Eaton, Collector of Internal Revenue. Judgment for plaintiff.

Henry Stoddard, of New Haven, Conn., pro se.

Frederick W. Dewart, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C., and John Buckley, U. S. Atty., and George H. Cohen, Asst. U. S. Atty., both of Hartford, Conn., for defendant.

THOMAS, District Judge. This is an action brought by the plaintiff to recover from the defendant certain additional income taxes assessed against the plaintiff in connection with his income tax returns for the years 1919, 1920, and 1921. The plaintiff paid these taxes under protest, and, his claim for refund having been rejected, he brings this action to recover the amounts paid. The additional taxes so assessed by the department and paid by the plaintiff were as follows: For the year 1919, $598.85; for 1920, $843.16, and for 1921, $2,488.47, plus interest in the amount of $502.10, making a total of $4,432.58.

The question involved is whether the plaintiff is entitled to deduct from his gross income claimed losses on the sale of securities which were held by trustees under the particular trust instrument given by the plaintiff, wherein, as it will appear, he was both donor and beneficiary.

The plaintiff is an individual and a resident of Connecticut. For a number of years it has been the custom of the plaintiff and his wife, both of whom are of advanced age, to spend the winter of each year in the South.

On December 21, 1916, the plaintiff voluntarily, for his personal convenience and purposes, and without consideration, executed, and Clifford I. Stoddard, son of the plaintiff, and the Union & New Haven Trust Company, accepted, the trust created by the following instrument:

"I, Henry Stoddard, of the town of Woodbridge, state of Connecticut, do hereby give, grant, sell, assign, transfer and convey unto my son, Clifford I. Stoddard, of said Woodbridge, as trustee, and unto the Union & New Haven Trust Company, a corporation organized under the laws of the state of Connecticut and located in said New Haven, as cotrustee, with my son, Clifford, the several items of property noted in the schedule or schedules of property hereto an-

nexed, marked Exhibit A, and made part hereof. The said trustees are to take, hold and dispose of said property upon the trust and subject to the conditions stated in this instrument. Said trustees shall have power to invest or reinvest any part of the principal of the trust fund, to change investments, and for that purpose to sell, convey, pledge and mortgage said trust fund at discretion to hold the same during my life, collect the income and to pay over to my wife, Amelia E. Stoddard, annually three thousand dollars ($3,000), to be paid in equal quarterly installments, on or about the 16th days of January, April, July and October in each year, and at such times to pay over the balance of said net income to me during the full term of my life. At my death the said trustees are to pay over and deliver to the trustees named in my will all the trust fund, principal, and income, to be held by such trustees named in my will upon the trusts and as a part of the trust fund created, established and provided for in my will.

"I hereby reserve the right to withdraw from said trust fund any and each item of property, and add thereto at my discretion, and I also reserve the right to terminate this trust, either in whole or in part, at my discretion, and in case of the exercise of such reserved right of withdrawal of any item of property, or of terminating this trust, in whole or in part, then and in such event, the trust shall terminate and the property shall be thereupon returned to me."

Subsequent to the execution of this instrument, the following securities, which are referred to in the instrument as being listed in Exhibit A, were delivered to the Union & New Haven Trust Company and placed in a safe deposit box: 500 shares, Brooklyn Rapid Transit Company. 100 shares, Scranton Electric Company, preferred. 100 shares, Mackay Company, preferred. 400 shares, Interborough Consolidated Corporation, preferred. 300 shares, American Telephone & Telegraph Company. 300 shares, General Electric Company. 161 shares, Associated Dry Goods Corporation, first preferred. 80 shares, Associated Dry Goods Corporation, second preferred. $13,000 par value, New York, New Haven & Hartford Railroad Company's debenture, due March 1, 1947, Nos. 1028 to 1031, both inclusive, 1045, 1712 to 1717, both inclusive, 1937 and 1938.

The stock certificates representing part of the securities were transferred to Clifford I. Stoddard and the Union & New Haven Trust Company, trustees under the deed of Henry Stoddard.

Subsequently, Henry Stoddard, Amelia E. Stoddard, his wife, Clifford I. Stoddard, his son, and the Union & New Haven Trust Company, executed the following instrument:

"Memorandum agreement, made this 28th day of October, 1918, by Amelia E. Stoddard and Henry Stoddard, husband and wife, with Clifford I. Stoddard and Union and New Haven Trust Company, trustees, witnesseth:

"That the said Amelia E. Stoddard has and does assign to said trustees the securities mentioned in the schedule annexed hereto, in trust, however, to collect and pay over the income and account for the principal as is herein stated. The trustees are to collect the income and add the same to the income received by said trustees from the Henry Stoddard Trust. The net joint income so received is to be paid over by said trustees to said Henry and Amelia E. Stoddard, one-half to each at the times and in the manner mentioned in the Henry Stoddard Trust. Said Amelia E. Stoddard may add to said trust or withdraw therefrom any securities at her pleasure and this trust terminates upon her death, and in such case, the trustees will turn over the trust property to her executors and administrators. Said Henry Stoddard agrees to the equal division of said joint net income and becomes a party hereto for that purpose."

From time to time, after the execution of the instrument in 1916, the plaintiff directed the sale of certain securities held by the trustees and the addition of others. During the years 1919, 1920, and 1921 certain of the securities held by the trustees under the Henry Stoddard instrument were sold at losses in the amounts of $2,482.80, $7,360.91, and $12,963.54, respectively. Of the securities sold, all except certain Liberty loan bonds, Victory notes, and Anglo-French bonds were acquired by the plaintiff prior to the creation of the so-called trust in 1916. The Liberty loan bonds and Victory notes were sold in 1921 at a loss of $171.23. The Anglo-French bonds were sold in 1920 at a profit of $310. The amount of the losses on securities acquired before March 1, 1913, was computed on the basis of cost or March 1, 1913, value, whichever was lower.

The plaintiff at all times retained control of the securities held by the trustees, and directed the sales of securities and the investment of funds held by them. In some cases the proceeds of sales were paid directly to the plaintiff, and in others they were paid to the trustees.

In October, 1924, the plaintiff and his wife revoked, in writing, the instruments they

had formerly executed, and the trustees returned to them the securities which they then held.

In his tax reports for the years 1919, 1920, and 1921, the plaintiff deducted from his gross income the stock losses above mentioned, and paid his income tax on the basis of the calculations thus made. A few years afterward he received notices of the recomputation of his returns as made by the department, the last one of which disallowed the reductions by way of stock losses, and assessed taxes in the sum of $3,930.48 as above stated.

The contention of the plaintiff is that the so-called "trust agreements" worked no severance of the trusteed securities from the corpus of the plaintiff's property, and that these securities, whether in the hands of the trustees or not, were always his own assets, and therefore that the losses sustained on their sale were proper items of deduction from his gross income. He says that the verbal form of the transaction does not necessarily control the construction to be placed upon it; that the environing conditions—the motivation, the reactions of the parties to the situation thus integrated and to its developing phases—all have a significance which the law must evaluate before the genuine relation of the transactions to the Income Tax Act may be ascertained. With this suggestion, stated in these general terms, I am disposed to agree. For we are not here concerned with the rights of contracting parties who may evoke a rule of estoppel to prevent the change of a comma in the written bond, nor are there innocent third parties involved who have relied upon a title or upon an authority expressed in writing.

Briefly, then, the plaintiff suggests that the documents above quoted, when viewed in their proper setting, work nothing more than a power of attorney to the trustees, and as descriptive of it the plaintiff uses the phrase "agency-trust," a term which is somewhat unusual. But the choice of a name by which they shall be called is not as important as the legal effect we shall give them when considered in connection with the Income Tax Act and the circumstances which led up to the execution of the documents.

I find from the evidence that, in spite of the large discretionary powers verbally granted, no sale or other disposition of securities or of their proceeds was ever made or suggested, except upon the direct order of the plaintiff. I find that the securities were dealt with by the plaintiff throughout the period of the so-called "trust" exactly as

if no other person had any possible interest in them, and I further find that the plaintiff did not always replace the securities withdrawn by others, or by the proceeds of their sale.

The plaintiff at all times retained control of the securities held by the trustees, and directed and controlled their management, and under the trust agreement had power to retake the legal title at will, and, as the plaintiff, in the exercise of such power, requested the trustees to execute and deliver to him full powers of transfer in blank, thereupon the trustees complied with such request, and then and thereby the plaintiff resumed the technical legal title, and sold the securities in question with the intent of establishing the claimed losses in each and every such instance. Such several securities were withdrawn from said trust, the title of the trustees terminated, and was revested in the plaintiff, and he then held the entire legal and beneficial title and ownership, and had the right to claim the capital losses established by such several sales.

It may well be asked, If the plaintiff intended to deliver nothing but a general power of attorney, why did he not employ the usual form? The explanation afforded seems cogent enough. A general power of attorney as ordinarily expressed, would, in order to be effective, either have to be too broad, or, if it were to be limited to specific property, it would be in need of intermittent amendment. This would be simple enough if it were not for the plaintiff's protracted absences in the South during the winter months.

That the equivocal formula adopted by the plaintiff has plunged him into more difficulties than those he avoided seems to be the result of a shifting canon of interpretation in the Bureau of Internal Revenue. At one time the bureau adopted the view that the income of a revocable trust under which the donor added or withdrew property at his will was income of the donor, regardless of the identity of the cestui que trust. If the plaintiff's views were the same, he might well fail to be meticulous as to the form into which he cast this transaction.

After all, the word "trust," as used in section 219 of the Revenue Act of 1918 (Comp. St. § 6336⅛ii), can hardly have been intended to comprehend every instance in which a trust is recognized in equity. A trust ex maleficio, a resulting trust, or a constructive trust are examples of trusts which do not fit into the frame of the statute. A trust, as therein understood, is not only an

express trust, but a genuine trust transaction. A revenue statute does not address itself to fictions.

The policy of the law is now more clearly expressed in the language of the acts of 1924 and 1926, which provide (43 Stat. 275, and 44 Stat. 32 [26 USCA § 960, subd. (g)]) that, where a grantor of a trust reserves the power to revest himself with the title to any of the corpus of the trust, then the income of such part is the income of the grantor.

While the act of 1924 is not applicable to the case at bar in the sense that the statute is not retroactive, nevertheless the action of Congress under the circumstances may well be regarded as a clarification of an originally obscure expression of legislative intent.

The defendant apparently relies upon Baltzell v. Mitchell (C. C. A.) 3 F.(2d) 428. It does not appear that that case was one involving a revocable trust. Furthermore, it was not the donor of the trust corpus who was the plaintiff, but the beneficiary of the income. There was no identification of the settlor and cestui, as is the case in the present instance. Furthermore, there was no question concerning the reality of the trust, and that is an important and material element in the case before me.

Defendant's motion to strike out testimony is granted to the following extent:

All of the requests are granted with the exception of the first, which is partially granted, to the extent that the plaintiff's testimony on pages 10, 11, 12, 13, 14, 15, 16, 17, and 18 is stricken out. Appropriate findings of fact will be submitted by the plaintiff.

Judgment may therefore be rendered for the plaintiff to recover of the defendant $4,432.58 and costs of suit, together with interest from December 12, 1925, to the date of the payment of the judgment.