BUCKLEY, Chamberlain, v. COMMISSIONER OF INTERNAL REVENUE.
No. 2.

Circuit Court of Appeals, Second Circuit.
July 17, 1933.

N. J., Roswell Magill and James O. Wynn, both of New York City, and George G. Tennant, Jr., of Jersey City, N. J. of counsel), for petitioner.

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key and Andrew D. Sharpe, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and W. R. Lansford, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before MANTON, SWAN, and CHASE, Circuit Judges.

CHASE, Circuit Judge (after stating the facts as above).

The petitioner claims that what has been called income and taxed is only a restoration of the principal of the award which would have been received by the remainderman had there been no election by the life tenant to take a lump sum in lieu of income. No doubt this is the theory designed to be worked out by the operation of the law under which the payment was made to the life tenant and the remainder invested and held. It was so recognized in respect to this very fund in Matter of Tucker, 187 App. Div. 502, 175 N. Y. S. 769, affirmed 228 N. Y. 505, 126 N. E. 923. But whether the accumulations were income taxable by the federal government after its income tax became effective presents a broader question. This fund, whatever the purpose to be achieved by holding it and adding the accumulations to it, was held in trust by the petitioner during the years in question. He did receive what it earned each year. These receipts fall within the definition of income contained in every applicable Revenue Act. Section 2 (a) of the Revenue Act of 1916 (39 Stat. 757); section 1200 of the Revenue Act of 1917 (40 Stat. 329); section 213 (a) of the Revenue Acts of 1918 and 1921 (40 Stat. 1065; 42 Stat. 237); Revenue Acts 1924 and 1926, § 213 (a), 26 USCA § 954. So, too, are they covered by the general and accepted definition of income for taxation purposes which the Supreme Court has held to be "the gain derived from capital, from labor, or from both combined." Eisner v. Macomber, 252 U. S. 189, 40 S. Ct. 189, 193, 64 L. Ed. 521, 9 A. L. R. 1570; Merchants' Loan & Trust Co., Tr., v. Smietanka, 225 U. S. 509, 517, 41 S. Ct. 386, 65 L. Ed. 751, 15 A. L. R. 1305. Do they then have a different character because of the theory that they were received to rebuild a capital fund depleted in 1877? Such a contention, first, presupposes that the remainderman had an abso-

Robert H. Montgomery, of New York City (Thomas G. Haight, of Jersey City,

lute right after the action of the New York court when it divided the award to receive the same amount in money which would have been held for him had the New York law permitted no such division; and, second, that Congress has seen fit to make a distinction between such a trust fund as this and trust funds whose income generally is taxable. Section 2 (b) of the Revenue Act of 1916 (39 Stat. 757); section 219 (a) of the Revenue Acts of 1918 and 1921 (40 Stat. 1071; 42 Stat. 246); Revenue Acts 1924 and 1926, § 219 (a), 26 USCA § 960 note.

After the court order of 1877, the ultimate taker, who will for convenience be referred to as though he were one person at all times known, although he was then neither ascertained nor ascertainable, was clearly entitled only to the part set aside for him as the then present worth of his interest in the award. That and not the original award became the principal sum of the trust created for his benefit. Instead of having a principal sum held in trust without accumulations, he was given its then computed equivalent, viz. a principal sum plus accumulations. Instead of being entitled to a sum certain at the death of the life tenant, the remainderman became entitled to his then present interest in the award plus whatever this interest would earn during the duration of the trust. As the trust was to terminate at the death of the life tenant, if the present worth in 1877 of the remainderman's interest happened to be computed in exact accordance with every contingency which arose, he would receive the amount of the original award. But obviously no one did or could know in 1877 how long the life tenant would live; nor how much the fund would earn; nor what the expenses of its administration would be; nor what losses might be sustained; nor what taxes might be imposed either upon it, or upon the income derived from it. The remainderman was not entitled, perforce, to more than his interest as the beneficiary of the trust actually created. As the uncertainties inherent in computing the principal of this fund were made certain by subsequent events he might gain or lose. So far as we are informed, the principal of that trust has never been depleted. Indeed, it has been increased by the accumulations, and all the time the trust was in existence the remainderman was entitled to receive upon its termination, not the amount of the original award for the land, but the amount of the trust, whether it were more or less than the original award. Matter of Tucker, supra, and Livingston v. Tucker, 107

N. Y. 549, 14 N. E. 413, bear no further on the present issue than that. The value in terms of the original award which the trust fund set up in 1877 was thought to represent is now immaterial. Of course, it is true that, had there been no division of the award and that sum been made the principal, the remainderman would have received it free of income tax, but that is only indicating what might have been and losing sight of realities. In the one instance there would have been no production of income which created a taxable shifting of economic interests that brought about any change in the principal; while what actually happened brought about such changes in every taxable period here involved. As these changes were due to the addition of what is defined by the law to be income, this income is prima facie taxable. To be otherwise, it must be shown that Congress has placed such income on a nontaxable basis by differentiating it from the income of trust funds generally. This has not been done.

■■ It is argued that this is a tax upon the exercise of the right of the city of New York to condemn land and so unconstitutional; but such a contention, if sound, means that whatever is earned by whatever is paid as an award in condemnation proceedings by a state or its political subdivision would be federal tax exempt to the recipient of such income. The mere stating of the effect refutes the argument. Clearly no tax assessed here has the slightest effect to curtail the power of the city of New York to condemn land or to decrease the amount of any award made in such a proceeding. After a government's property becomes that of a private individual, the fact of former governmental ownership does not impart exemption from taxation to it or to what is earned by it. Compare Group No. 1 Oil Corp. v. Bass, 283 U. S. 279, 51 S. Ct. 432, 75 L. Ed. 1032; Fox Film Corp. v. Doyal et al., 286 U. S. 123, 52 S. Ct. 546, 76 L. Ed. 1010.

■■ Finally, it is argued that the city chamberlain is not a taxable person and that this fund in his custody by order of the state court cannot earn income returnable by him for federal taxation. It should be observed that there has been no attempt to interfere with the fund itself or with the control of it by the city chamberlain; nor is it a fund held by him for public use. He is an officer of the state court, so far as we are now concerned, holding a fund for investment, accumulation, and distribution subject to the orders of the

court and entirely for the benefit of the remainderman. He holds it in no other capacity. What other duties the custodian may perform by virtue of other powers and what he may or may not do as chamberlain of the city of New York seem to be beside the point. It can hardly be thought that, because the court selected the chamberlain of the city of New York to act as the custodian of a fund representing only a private interest, the taxability of the income earned by that fund can stand any differently than it would if a private individual had been empowered to administer the fund. In the latter event it would have had no immunity from taxation. Central Trust Co. v. New York City & N. R. R. Co., 110 N. Y. 250, 18 N. E. 92, 1 L. R A. 260; Stevens v. N. Y. & O. M. R. Co., 23 Fed. Cas. No. 13,405, 13 Blatchf. 104. Moreover, neither property held by a trustee in bankruptcy is exempt from taxation, Swarts v. Hammer, 194 U. S. 441, 24 S. Ct. 695, 48 L. Ed. 1060; nor is that in the hands of a receiver appointed by the court, In re Tyler, 149 U. S. 164, 13 S. Ct. 785, 37 L. Ed. 689. The imposition of these taxes cut down no revenue of the city of New York, interfered in no way with the official duties of the city chamberlain as such, and impaired no state function. There has been no direct burden laid upon any instrumentality of government. Compare Willcuts v. Bunn, 282 U. S. 216, 51 S. Ct. 125, 75 L. Ed. 304. Only the income of a fund held for the benefit of a private person has been taxed in accordance with the law relating to the taxation of income from funds held by fiduciaries under orders of court. The suggestion that the city chamberlain cannot pay the taxes imposed without leave from the state court need not now be discussed. We are unwilling to believe that, when the validity of the taxes has been established, any difficulty will be encountered in their collection either through action or inaction on the part of the state court. Nor does the contention that because section 143 (a) of the Revenue Act of 1928 (26 USCA § 2143 (a), provided that a receiver appointed by authority of law and in possession of only a part of the property of an individual need not make a return of income require a different result. That provision relates to receivers as there defined, and was to do away with partial returns, not to exempt income from taxation. Compare North American Oil Consolidated v. Burnet, 286 U. S. 417, 52 S. Ct. 613, 76 L. Ed. 1197. This petitioner has not been shown to be such a receiver.

Affirmed.