**MEEKER v. DUREY et al.**
**No. 48.**

Circuit Court of Appeals, Second Circuit.
Nov. 8, 1937.

Meighan & Necarsulmer, of New York City (Burton C. Meighan, Jr., and David Berkowitz, both of New York City, of counsel), for appellant.

James W. Morris, Asst. Atty. Gen., Sewall Key, Norman D. Keller, and W. Croft Jennings, Sp. Assts. to the Atty. Gen., and Ralph L. Emmons, U. S. Atty., of Syracuse, N. Y., for appellees.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

Certain residents of Mamaroneck, N. Y., subscribed and paid over to a committee of several persons sums aggregating $15,641.75 for the purpose of buying a piece of property on which to erect a community house as a memorial to the veterans of the World War. Provided enough money was collected after the property was purchased to build a community house, the property was to be turned over by the subscribers to the town or some organization to complete the project.

On May 21, 1921, one of the committee signed a contract for the purchase of the site, and on June 7, 1921, took title to it in the name of John J. McArdle, who, with his wife, executed an instrument acknowledging that the consideration was paid out of funds subscribed by the public for the purpose of erecting a "Community House" for the village of Mamaroneck and declaring that McArdle held title only as an intermediary and until it should be determined by the persons in charge of the movement that the premises should be deeded to some other person or corporation. McArdle simultaneously drew a codicil to his will, leaving the property to his wife. The plan for the Community House fell through, owing to inability to raise money for that purpose, and meetings of the subscribers were thereafter held to determine what to do with the property that had been purchased.

On March 15, 1926, it was decided to sell the property and to divide the proceeds among the subscribers or their legal representatives. Written authorizations were signed by all the subscribers empowering McArdle to sell to the highest bidder and to dispose of the subscribers' interests as they or their representatives might direct. In March, 1928, McArdle died, and his widow became the devisee of the property. At the request of the committee which had been chosen by the subscribers to attend to the sale, she conveyed the property to the First National Bank & Trust Company of Mamaroneck, and on March 1, 1929, the bank conveyed it to a purchaser, with whom the committee had negotiated a sale, at a net gain of $95,928.54. This gain was finally realized on May 15, 1930, and thereafter the bank brought a suit in the New York Supreme Court for the purpose of settling its accounts and distributing the proceeds in which all the living subscribers, their executors, administrators and assigns were named as defendants. There is nothing in the record to show that all the persons interested in the fund were not ascertainable.

The Commissioner of Internal Revenue ruled that the bank held legal title to the property as trustee, that the fund in its hands constituted a "trust or estate" within the meaning of the Revenue Act, and that it must pay a tax on the net gain realized. He accordingly assessed a tax amounting to $11,991.07 and $2,657.70 interest against the bank as trustee, which the latter paid to the collector under protest. The bank made an application for a refund, which was rejected, and thereafter brought the present action against the collector to recover the tax. The trial court sustained the collector, held that the bank was liable for the tax as a fiduciary, and entered judgment dismissing the complaint, from which the present appeal was taken.

The question before us is whether, within the meaning of section 161 of the Revenue Act of 1928 (26 U.S.C.A. § 161 and note), the bank acted as a fiduciary for the subscribers or only as agent for those persons. In the latter case the gain realized through the sale was not that of the trust estate but of the subscribers or their

representatives, and the tax was not assessable to or payable by the bank, but by the subscribers. There is the further question whether, even if the bank was a "fiduciary" within the meaning of the act, the gain arising out of the sale was not income distributable to the subscribers and hence taxable against them rather than against the fiduciary.

The bank was apparently a mere agent and not a trustee. It had no active duties to perform. It neither negotiated the sale of the property, paid taxes, nor did more than execute a conveyance, pursuant to the contract of sale, which the committee had arranged, and then receive the proceeds for the purpose of distributing them to the subscribers. In other words, the bank was nothing but the apparent holder of title and, under the New York Real Property Law (Consol.Laws, c. 50), §§ 91, 92, 93, 95, and 96, a passive and not an active trustee. The arrangement between the subscribers and the committee and the bank did not create one of the "express trusts" provided for under section 96, supra. Section 93 provides that:

"Every disposition of real property, whether by deed or by devise, shall be made directly to the person in whom the right to the possession and profits is intended to be vested, and not to another to the use of, or in trust for, such person; and if made to any person to the use of, or in trust for another, no estate or interest, legal or equitable, vests in the trustee. But neither this section nor the preceding sections of this article shall extend to the trusts arising, or resulting by implication of law, nor prevent or affect the creation of such express trusts as are authorized and defined in this chapter."

It seems clear that under the New York law neither the deed to McArdle, nor the deed to the bank, conveyed a legal title to the original or ultimate fiduciary, but only gave rise to a so-called passive trust whereby the title became at once vested in the subscribers who owned the beneficial interest. Jacoby v. Jacoby, 188 N.Y. 124, 80 N.E. 676; Stoddard v. Eaton, 22 F.(2d) 184 (D.C.Conn.); Pugh v. Commissioner (C.C.A.) 49 F.(2d) 76, affirming 17 B.T.A. 429. The bank was not a fiduciary as defined by section 701 (a) (5) of the Revenue Act 1928, 45 Stat. 878 (26 U.S.C.A. § 1696 and note), and Regulations, art. 1321.

Even though the bank was a "fiduciary" within the meaning of the act, the gain realized from the sale was income belonging to the subscribers and not "income accumulated in trust for the benefit of unborn or unascertained persons or persons with contingent interests," which should be assessed against the fiduciary under section 161 of the Revenue Act 1928 (26 U. S.C.A. § 161 and note). The project to erect a Community House was abandoned prior to the sale, and the proceeds were distributable to the subscribers or their representatives. There is not the slightest proof that those persons were uncertain. Indeed, they seemed to be fully identified, and, if not, their identification did not depend on any future contingency but only on the application of legal principles to existing facts. DeBrabant v. Commissioner (C.C.A.) 90 F.(2d) 433. The action brought in the state court to obtain a decree settling the accounts of the bank and ordering distribution was merely a convenient mode of administering the fund, which did not depend on the existence of contingent interests or of unascertained persons. Our recent decision in DeBrabant v. Commissioner, 90 F.(2d) 433, is decisive of the correctness of the bank's contention that the gain realized was taxable against the subscribers or their representatives, and not against it.

In any event, the conveyance, if creating a trust, effected a trust that was revocable and one under which the income ought to be included in returns of the subscribers. Under sections 166 and 167 of the Revenue Act 1928 (26 U.S.C.A. §§ 166 note, 167 note), the tax upon such income was assessable against them and not against the bank as fiduciary.

Inasmuch as the bank was not taxable as a fiduciary, the judgment is reversed, with direction to enter judgment for the plaintiff for $14,648.77 and interest. The appellant is entitled to costs in this court.