LOFT, INCORPORATED,

*vs.*

CHARLES G. GUTH, THE GRACE COMPANY, INC., OF DELAWARE, a corporation of the State of Delaware, and PEPSI-COLA COMPANY, a corporation of the State of Delaware.

In the Matter of the Petition of UNITED STATES to Intervene to Assert an Alleged Income Tax Liability against Sequestrator.

*New Castle, June 7, 1940.*

*Clarence A. Southerland* and *David F. Anderson,* of Southerland, Berl, Potter and Leahy, (*Hays, Podell & Shulman,* of New York City on the brief), for complainant.

*Stewart Lynch,* U. S. District Attorney, *Samuel O. Clark, Jr.,* Assistant Attorney General, and *Andrew D. Sharpe* and *Frederic G. Rita,* Special Assistants to the Attorney General, for the United States.

THE CHANCELLOR: This case is now before this court on the motion of Loft, Incorporated, the complainant, to dismiss the petition of the United States to intervene, and to become a party thereto, in order to assert an alleged right to collect certain income taxes.

At the very inception of this suit, in December of 1935, certain shares of corporate stock, standing in the name of Charles G. Guth, one of the defendants, and including a large block of stock of the Pepsi-Cola Company, a corporation of

this State, were seized by one George R. McDougall, by the order of this court. The reason for such seizure will appear later.

On or about December 28th, 1936, McDougall received a dividend on the Pepsi-Cola stock, so seized by him, amounting to $199,418. All of these facts are alleged in the petition of the intervenor, and admitted by the complainant's motion to dismiss that petition; and the question to be determined is whether the dividend on the Pepsi-Cola stock, so received by McDougall, and now held by him, is liable for federal income taxes. That such dividend must be ultimately accounted for, as income, is not denied, but it is contended that Loft, and Loft only, will be compelled to file a return, including said dividend, when it shall have been paid to that corporation. The claim of the United States that an income tax is now due and payable on the dividend in question is based on *Section* 161 (*a*) (1) of the *Revenue Act of* 1936, *c.* 690, 49 *Stat.* 1648, 26 *U. S. C. A. Int. Rev. Code* § 161 (*a*)

(1). That section provides:

*Sec.* 161. IMPOSITION OF TAX

"(a) Application of tax. The taxes imposed by this title [chapter] upon individuals shall apply to the income of estates or of any kind of property held in trust, including—

"(1) Income accumulated in trust for the benefit of unborn or unascertained persons or persons with contingent interests, and income accumulated or held for future distribution under the terms of the will or trust."

Other paragraphs of *Section* 161 (*a*), also, provide:

"(2) Income which is to be distributed currently by the fiduciary to the beneficiaries, and income collected by a guardian of an infant which is to be held or distributed as the court may direct;

"(3) Income received by estates of deceased persons during the period of administration or settlement of the estate; and

"(4) Income which, in the discretion of the fiduciary, may be either distributed to the beneficiaries, or accumulated."

*Section* 161 (*b*) provides:

"Computation and payment. The tax shall be computed upon the net income of the estate or trust, and shall be paid by the fiduciary, except as provided in *section* 166 (relating to revocable trusts) and *section* 167 (relating to income for benefit of the grantor). For return made by beneficiary, see *section* 142." 26 *U. S. C. A. Int. Rev. Code,* § 161 (*a*) (2-4), (*b*).

*Section* 1001 of the *Revenue Act* further provides:

"Definitions

"(a) When used in this Act [title] * * *

"(6) The term 'fiduciary' means a guardian, trustee, executor, administrator, receiver, conservator, or any person acting in any fiduciary capacity for any person. * * *" 26 *U. S. C. A. Int. Rev. Code,* § 3797 (*a*) (6).

The specific questions to be determined, therefore, are:

1. Was the Pepsi-Cola dividend, received and held by McDougall "property held in trust," within the meaning of Section 161 of the Federal Income Tax Statute?

2. If "property held in trust," or in some such "fiduciary capacity," was the Pepsi-Cola dividend "income accumulated for the benefit of unborn or unascertained persons or persons with contingent interests * * *?"

Relying, largely, on *Ferguson v. Forstmann,* (3 *Cir*) 25 *F.* 2*d* 47, and *Hart v. Commissioner,* (1 *Cir.*) 54 *F.* 2*d* 848, the United States contends that, while McDougall may not be a trustee in the strict sense, he is, nevertheless, in the position of a fiduciary, with respect to the dividend received by him, and not a mere agent of this court. It, also, contends that such dividend was and is "income accumulated in trust for the benefit of * * * unascertained persons," within the meaning of *Section* 161 (*a*) (1) of the *Revenue Act* in question. Conceding, that when such dividend was received by McDougall, its real ownership necessarily depended on the ultimate result of this suit, in view of the context of this statute, whether the words "unascertained persons" can be fairly construed to have that broad meaning, would seem to be at least questionable. As we have

seen, under that section of the Act, "the income of estates or of any kind of property held in trust," made taxable, includes "income accumulated in trust for the benefit of unborn or unascertained persons or persons with contingent interests, and income accumulated or held for future distribution under the terms of the will or trust; * * *." It is not contended that the parties to this action are, in any true sense, unknown, unidentified or unascertained persons, or corporate entities. Regardless of whether McDougall can be said to be a trustee, or a fiduciary of that nature, within the meaning of *Section* 161 (*a*) (1) of the *Revenue Act of* 1936, both by reason of its language and by the authority of more recent cases, when *Section* (*a*) of that act is read as a whole, the contention of the complainant that the dividend in question is not within the scope of paragraph (1) is difficult to answer. A conclusion, in accord with the complainant's contention, was reached by the Federal Board of Tax Appeals in *Wilson v. Commissioner*, 33 *B. T. A.* 649. A question of title was likewise involved in that case, and, pending its prosecution and decision, a receiver was appointed to receive a considerable amount of income from oil and gas leases, etc. These receipts were spread over a period of several years, and the whole amount finally received by the person who prevailed in the controversy was treated by the tax authorities as income for the year in which it was actually paid to him. The taxable contended that under a statutory provision embodying almost identical language, annual reports should have been filed and taxes paid by the receiver accordingly, but the Board of Tax Appeals rejected that contention on the ground that the parties to the action were in no sense "unascertained persons or persons with contingent interests." Both *Ferguson v. Forstmann* and *Hart v. Commissioner, supra,* seem to be inconsistent with the conclusion of the Board of Tax Appeals in that case; but in 1937 the ruling of that Board was affirmed, in principle, by the Circuit Court of Appeals in both *DeBrabant v. Commissioner,* (2 *Cir.*) 90 *F. 2d* 433, and in

*Meeker v. Durey,* (2 *Cir.*) 92 *F.* 2*d* 607. The conclusion of the court in *DeBrabant v. Commissioner, supra* [90 *F.* 2*d* 435], was not only, in part, based on what it termed the "almost inevitable meaning of the words 'unascertained persons,'" used in the *Revenue Act,* but, applying the *ejusdem generis* rule, also, on the meaning of those words when read in connection with the accompanying words "unborn * * * persons," and the phrase "or persons with contingent interests." Both *Ferguson v. Forstmann* and *Hart v. Commissioner, supra,* were relied on by the taxpayer in the *DeBrabant* case, but the court refused to follow their reasoning. True, they were expressly distinguished on the ground that in both of them the court had set up trusts by orders which provided for the collection and accumulation of income until the persons entitled should be determined in that litigation. The real important fact, however, is that in *DeBrabant v. Commissioner, supra,* the court refused to follow the principles announced in the earlier cases; and, in principle, the discussion of that question is important, even though it be contended that the real basis of the decision did not involve the language used in *Section* 161 (*a*) (1) of the *Revenue Act.* But no such criticism can apply to *Meeker v. Durey,* (2 *Cir.*) 92 *F.* 2*d* 607, 609, *supra.* In that case certain funds had been collected by subscription for the erection of a community house in a certain town in the State of New York. Property was purchased with the funds so collected and title taken in the name of an individual subscriber, who, with his wife, executed an instrument, acknowledging that the purchase price had been paid from the funds subscribed by the public for the erection of a community house, and declaring that the grantee held title only as an intermediary and until it should be determined by the persons in charge of the movement that the premises should be deeded to some other person or corporation. The plan for the erection of the community house failed because of the inability to raise sufficient funds, and the subscribers subsequently determined to sell the property so purchased, and

to divide the proceeds among themselves, or their legal representatives. In order to carry out this plan, written authorizations were signed by all of the subscribers to the project, empowering the person to whom the conveyance had been made to sell the property to the highest bidder, and to dispose of the proceeds as such subscribers, or their representatives, might direct. The grantee in the deed subsequently died, and his widow became the devisee of the property conveyed to him. At the request of the committee, chosen by the subscribers to effect a sale, she conveyed the property to a local banking institution, which subsequently conveyed it to a purchaser, at a substantial advance over the original purchase price. This sale had been negotiated by the committee before the conveyance to the bank. The Commissioner of Internal Revenue ruled that the profit, arising from the sale, in the hands of the bank constituted a trust fund for unascertained persons and that it must pay a Federal Income Tax thereon. The Circuit Court of Appeals held, however, that the bank was a mere agent, and not a fiduciary within the meaning of the *Revenue Act of* 1928, § 701 (*a*) (5), 26 *U. S. C. A. Int. Rev. Code,* § 3797 (*a*) (6), and that, even though it were, the gain realized from the sale was income belonging to the subscribers and not "income accumulated in trust for the benefit of unborn or unascertained persons or persons with contingent interests." The court, also, added "there is not the slightest proof that those persons [the subscribers to the fund, or their legal representatives] were uncertain. Indeed, they seemed to be fully identified, and, if not, their identification did not depend on any future contingency but only on the application of legal principles to existing facts. *DeBrabant v. Commissioner,* (*C. C. A.*) 90 *F.* 2d 433."

The complainant, in support of its motion to dismiss the petition of the intervenor, also, relies on *North American Oil Consolidated v. Burnet,* 286 *U. S.* 417, 52 *S. Ct.* 613, 76 *L. Ed.* 1197, but, notwithstanding certain statements of

the court in *Commissioner v. Owens*, (10 *Cir.*) 78 *F.* 2d 768, it does not clearly appear that the question before this court was passed on by the Supreme Court in the *Burnet* case.

There is undoubted force in the complainant's contention that the income in question was not for the benefit of "unascertained persons." Moreover, the history of the *Revenue Act* may tend to confirm that contention (see *Commissioner v. Owens*, (10 *Cir.*) 78 *F.* 2d 768) ; but it is unnecessary for me to determine that question.

The important question to be determined, however, is whether McDougall is a trustee within the meaning of *Section* 161 (*a*) (1) of the *Revenue Act*.

*Section* 4374 of the *Revised Code of* 1935 is primarily intended to compel the appearance of non-resident defendants in equity by the seizure of property belonging to them in this State, and the seizure of Guth's property by McDougall was primarily for that purpose. Under the provisions of that section, property so seized "may be sold under the order of the Chancellor to pay the demand of the complainant, if the defendant shall not appear, or shall otherwise default." See *Cantor v. Sachs*, 18 *Del. Ch.* 359, 162 *A.* 73. The Chancellor is given the power to make all necessary rules "respecting the form of process, the manner of issuance and return thereof" etc. He may also "require the plaintiff to give approved security to abide any order" made by him "respecting the said property." The statute further provides that "any transfer or assignment of the property so seized as aforesaid after the seizure thereof shall be void and after the sale of said property is made and confirmed, the purchaser shall be entitled to have all the right, title and interest of the defendant in and to the property so seized and sold." The person so directed by the court to make such seizure, is usually called a "sequestrator," but that word does not appear in the statute.

*Section* 161 (*a*) (1) applies to "the income of estates or of any kind of property held in trust  *  *  *.

"(1)   Income accumulated in trust for the benefit of" certain specified persons."

The United States concedes that McDougall is not a trustee in the strict sense of that term, but contends that he is a fiduciary of that general nature. I am unable to agree with that contention.

The word "fiduciary" is used in other paragraphs of the act, and is defined in *Section* 1001, but it is not used in *Section* 161 (*a*) (1), which merely relates to trusts; so the definition section has no bearing on this case. By whatever name McDougall may be called, under our statute he is but a mere ministerial agent of this court having the nominal possession of property and funds, which are in the real custody and control of the court, and, therefore, can act only according to its express directions. See *Meeker v. Durey*, (2 *Cir*.) 92 *F*. 2*d* 607. Because of that fact, the motion of the complainant to dismiss the petition of the intervenor is granted, and a decree will be entered accordingly.

Note.   On appeal by the United States, the decree dismissing the petition to intervene was affirmed. See *United States of America vs. Guth, et al., post* p. 363, 19 *A*. 2*d* 721.