LEE McRITCHIE AND AGNES McRITCHIE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 56936. Filed October 19, 1956.

*Logan Morris, Esq.*, and *Joseph J. Pugh, Esq.*, for the petitioners. *Jules I. Whitman, Esq.*, for the respondent.

OPINION.

RAUM, *Judge:* The sole question is whether petitioners must account in their 1951 income tax return for dividends declared in 1948, 1949,

and 1950 on stock owned by Lee McRitchie and paid into the registry of a Federal District Court in 1949 and 1950 by the corporation in connection with litigation relating to title to the stock. The litigation terminated in favor of Lee McRitchie in 1951 and the fund was then promptly released to him. All of the facts have been stipulated, and an abbreviated statement will be sufficient to bring the problem into focus.

Lee McRitchie and his wife filed their returns on the cash basis. We will refer to him as the petitioner. In 1939 he purchased 172 shares of stock in Broward County Kennel Club, Inc. (hereinafter referred to as Broward), a Florida corporation, from William J. Syms, Sr. A controversy subsequently developed between petitioner and Syms, who, on June 2, 1948, notified petitioner that he claimed ownership of the 172 shares and all the dividends accruing thereon; he contended that his 1939 transfer to petitioner was void in that he had failed to give notice of the proposed transfer prior thereto to all other stockholders, as required by the corporate bylaws.

Thereafter, during 1948, Broward declared dividends aggregating $43,000 with respect to the 172 shares but held the dividends, without payment, pending determination of their lawful ownership. On February 2, 1949, Broward instituted an interpleader action against petitioner and Syms in the United States District Court for the Southern District of Florida, and on the same day paid the foregoing 1948 dividends of $43,000 into the registry of the court. On May 11, 1949, Broward paid $51,600 into the registry of the court, representing 1949 dividends previously declared with respect to the 172 shares.

On August 1, 1949, the court entered an order, absolving Broward from all liability for the foregoing payments and approving and confirming them. The court further ordered that during the pendency of the action, and until further order of the court, Broward pay into the registry of the court all dividends thereafter declared on the stock. Subsequently, on April 27, 1950, Broward paid $60,200 into the registry of the court, representing dividends declared in 1950 on the shares in controversy.

Meanwhile, on December 6, 1949, the court had entered an order against Syms, holding that petitioner was the lawful owner of the shares and dividends. Syms filed a notice of appeal, and the court ordered that the appeal should act as a supersedeas with respect to the funds in the registry of the court upon the filing of a surety bond. Syms filed such a bond on December 21, 1949. On April 25, 1951, the Court of Appeals for the Fifth Circuit affirmed the judgment of the District Court (187 F. 2d 915), and 5 days later the District Court

authorized the disbursement of the dividends in its registry to petitioner.[1]

In his notice of deficiency the respondent determined that "Dividends declared in the years 1948, 1949 and 1950, which were held by U. S. District Court, Miami, pending the termination of litigation to determine title, are taxable to you in the year 1951 when released to you by the Court."

The petitioner contends that the status of the dividends in question as income was fixed in the years 1948, 1949, and 1950, when they were declared and paid; that the Broward County Kennel Club, Inc., and the registry of the United States District Court were fiduciaries for unascertained persons with respect to the dividends received by them in 1948, 1949, and 1950, and, as fiduciaries, should have filed returns for those years and paid the income taxes thereon; and that the fact that the fiduciaries failed to file the required returns[2] and pay the taxes does not make the dividends taxable to petitioner for the year in which they were received by him.

Pertinent provisions of the Internal Revenue Code of 1939 are set forth in the margin.[3]

---

[1] Of the amounts totaling $154,800 deposited in the registry of the court the following payments were made:

| Date | Payee | |
|---|---|---|
| Aug. 4, 1949 | Fee and costs to C. H. Landerfeld (atty. for Broward County Kennel Club, Inc.) | $2,522.24 |
| May 1, 1951 | Shutts, Bowen, Simmons, Prevatt and Julian, as attorneys for McRitchie | 152,277.76 |
| | Total | $154,800.00 |

There was a wire clearance charge of $1.75 on the check for $152,277.76, and the balance of $152,276.01 was deposited in the attorneys' trust account. From this $152,276.01, Shutts, Bowen, Simmons, Prevatt and Julian deducted $20,000 attorneys' fees and $8.21 expenses, and on May 20, 1951, paid out the net balance of $132,267.80 to petitioner. The $20,000 attorneys' fees and $8.21 expenses were claimed as deductions in petitioners' 1951 income tax return. On or about November 28, 1951, petitioner received $2,522.24 paid by Syms in reimbursement of the fee and costs paid to Landerfeld on August 4, 1949, out of the registry of the court.

[2] Petitioner himself, on March 14, 1952, undertook to file two fiduciary income tax returns, one as transferee of Broward, "Trustee," for 1948, and the other as transferee of the District Court, "Trustee," for 1949 and 1950, reporting in each of them the dividends applicable to the particular year in question. He also filed protective claims for refund of the taxes paid in connection with those returns.

[3] SEC. 142. FIDUCIARY RETURNS.

(a) REQUIREMENT OF RETURN.—Every fiduciary (except a receiver appointed by authority of law in possession of part only of the property of an individual) shall make under oath a return for any of the following individuals, estates, or trusts for which he acts, stating specifically the items of gross income thereof and the deductions and credits allowed under this chapter * * *

(1) Every individual having a gross income for the taxable year of $600 or over;
(2) Every estate the gross income of which for the taxable year is $600 or over;
(3) Every trust the net income of which for the taxable year is $100 or over, or the gross income of which for the taxable year is $600 or over, regardless of the amount of the net income; * * *

In order to prevail petitioner must establish that, pursuant to section 161 (a) (1), the dividends in question constituted "income accumulated in trust for the benefit of * * * unascertained persons," and that they should have been reported by the "trustee" or "fiduciary" during each of the years 1948–1950. Petitioner relies upon *Ferguson* v. *Forstmann*, 25 F. 2d 47 (C. A. 3) ; *Buckley* v. *Commissioner*, 66 F. 2d 394 (C. A. 2), certiorari denied 290 U. S. 698; *Hart* v. *Commissioner*, 54 F. 2d 848 (C. A. 1) ; *Commissioner* v. *Owens*, 78 F. 2d 768 (C. A. 10). On the other hand, the Government contends that the dividends became income to petitioner in 1951 when he received them, and in support of its position it cites *J. E. Farrell*, 45 B. T. A. 162, affirmed 134 F. 2d 193 (C. A. 5), certiorari denied 320 U. S. 745; *Estate of S. W. Anthony*, 5 T. C. 752, affirmed 155 F. 2d 980 (C. A. 10) ; *E. T. Slider, Inc.*, 5 T. C. 263; *London-Butte Gold Mines Co.*, 41 B. T. A. 852, affirmed 116 F. 2d 478 (C. A. 10) ; *William Justin Petit*, 8 T. C. 228; *North American Oil Consolidated* v. *Burnet*, 286 U. S. 417; *United States* v. *Loft, Inc.*, 25 Del. Ch. 363, 19 A. 2d 721, affirming 25 Del. Ch. 87, 13 A. 2d 706. The problem is not completely free from doubt; the issue was not squarely raised in some of the foregoing cases and it is not clear to what extent all of the remaining cases can be reconciled, although it is perhaps possible to spell out certain narrow and unrealistic distinctions in some of them.

Looking at the matter as a whole and taking into account the probable legislative purpose of the provisions in question, we think that these provisions were not meant to require Broward to file a return as a fiduciary in 1948 and the Federal District Court to file a return for 1949 and 1950. As to Broward, there is no showing that it set aside in trust or otherwise segregated any funds in 1948, or that it in any way became a fiduciary with respect to the dividends. At most, as far as this record discloses, Broward merely became indebted to pay the amount of the dividends to the rightful owner of the stock. It was simply a debtor and not a fiduciary. And as to the Federal District Court, it is plain that there was no trust within the usually

SEC. 161. IMPOSITION OF TAX.

(a) APPLICATION OF TAX.—The taxes imposed by this chapter (other than the tax imposed by subchapter E, relating to tax on self-employment income) upon individuals shall apply to the income of estates or of any kind of property held in trust, including—

(1) Income accumulated in trust for the benefit of unborn or unascertained persons or persons with contingent interests, and income accumulated or held for future distribution under the terms of the will or trust;

\* \* \* \* \* \*

(b) COMPUTATION AND PAYMENT.—The tax shall be computed upon the net income of the estate or trust, and shall be paid by the fiduciary, * * *

SEC. 3797. DEFINITIONS.

(a) When used in this title, where not otherwise distinctly expressed or manifestly incompatible with the intent thereof—

\* \* \* \* \* \*

(6) FIDUCIARY.—The term "fiduciary" means a guardian, trustee, executor, administrator, receiver, conservator, or any person acting in any fiduciary capacity for any person.

accepted meaning of that term.[4]   It did not hold the shares of stock upon which the dividends were paid; it did not receive any income on property held by it in a fiduciary capacity; it was a mere stake-holder of money turned over to it without the ordinary duties which customarily devolve upon a trustee or fiduciary to administer a trust fund or other assets; it did not in fact file any return,[5] and there is no showing of any general administrative practice whereby returns have been filed by other courts in like circumstances.   Surely, it is not uncommon to deposit disputed funds into the registry of a court, and, in the absence of any clear expression of legislative intent or the existence of a practice recognizing the duty of the court to file a return, we should be slow to read such a requirement into the statute.

Moreover, we think that the dividends in question were not being accumulated for "unascertained persons" within the meaning of section 161 (a) (1).   The controversy between Syms and petitioner raised the question as to which one of two *ascertained* persons had the superior right to the dividends.   The problem was considered in *De Brabant* v. *Commissioner*, 90 F. 2d 433 (C. A. 2), where Judge A. N. Hand said (p. 435) :

The clause of section 161 (a) (1) of the Revenue Act of 1928 * * * which refers to accumulations of income for "unascertained persons" indicates the sort of persons contemplated when it uses the words "unborn" and "with contingent interests" to describe the class it has in mind.   Thus under the rule of "ejusdem generis", as well as by reason of the almost inevitable meaning of the words "unascertained persons", reference is made to those whose identification depends on future contingencies rather than on a correct understanding of the application of the law to existing facts.

See also *Meeker* v. *Durey*, 92 F. 2d 607, 609 (C. A. 2) ; *J. E. Farrell*, 45 B. T. A. 162, 171, affirmed 134 F. 2d 193 (C. A. 5), certiorari denied 320 U. S. 745; *Robert F. Chapman*, 3 T. C. 708, 712; *Higginson* v. *United States*, 137 F. Supp. 240, 243 (D. Mass.) ; *United States* v. *Loft, Inc.*, 25 Del. Ch. 363, 369, 19 A. 2d 721, 723, affirming 25 Del. Ch. 87, 92–96, 13 A. 2d 706, 709; *Commissioner* v. *Owens*, 78 F. 2d 768, 775 (C. A. 10).   *Ferguson* v. *Forstmann, supra*, points

---

[4] The meaning of the term "trust" as used in the Internal Revenue Code of 1939 is set forth in Treasury Regulations 111, sec. 29.3797–3, as follows :

The term "trust", as used in the Internal Revenue Code, refers to an ordinary trust, namely, one created by will or by declaration of the trustees or the grantor, the trustees of which take title to the property for the purpose of protecting or conserving it as customarily required under ordinary rules applied in chancery and probate courts.

See also Regs. 86, art. 801–3 ; Regs. 94, art. 1001–3 ; Regs. 101, art. 901–3 ; Regs. 103, sec. 19.379–3 ; Regs. 118, sec. 39.3797–3.   This definition appeared for the first time in Regs. 86 relating to the revenue Act of 1934.

In prior years there had not been unanimity among the courts as to the meaning of the word "trust."   Compare *Stoddard* v. *Eaton*, 22 F. 2d 184, 186 (D. Conn.), and *Prudence Miller Trust*. 7 T. C. 1245, 1248, with *Hart* v. *Commissioner*, 54 F. 2d 848, 850–851 (C. A. 1).

[5] The fact that petitioner himself belatedly filed returns as "transferee" of assets of the court and Broward does not carry any weight here.   It was plainly a maneuver intended merely to bolster his position in the present controversy.

perhaps in the opposite direction,[6] but we think that the foregoing cases represent the sounder view.

Petitioner and Syms were identified persons, and, at best, funds were being held by a stakeholder for one of them. When the litigation was concluded and the dividends paid over to petitioner in 1951 they became income to him at that time. We hold that the Commissioner did not err in attributing those dividends to him for 1951.

Reviewed by the Court.

*Decision will be entered for the respondent.*

---

[6] The authoritativeness of *Ferguson* v. *Forstmann,* 25 F. 2d 47 (C. A. 3), in general may well be open to question. In the *North American Oil Consolidated* case (12 B. T. A. 68, 93), the Board of Tax Appeals relied upon *Ferguson* v. *Forstmann, supra,* but it was ultimately reversed by the Supreme Court, 286 U. S. 417.