GEORGE M. STREET, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 62412.    Filed December 9, 1957.

*C. Delbert Hosemann, Esq.,* and *Alex J. Brunini, Esq.,* for the petitioner.

*Lester R. Uretz, Esq.,* for the respondent.

PIERCE, *Judge:* The respondent determined a deficiency in the gift tax of the petitioner for the calendar year 1952 in the amount of $990.08.

The sole issue for decision is whether certain gifts in trust of corporate stocks made by the petitioner in 1952 for the primary

benefit of six of his grandchildren were gifts of "future interests" or gifts of present interests within the meaning of section 1003 (b) (3) of the Internal Revenue Code of 1939.[1]

FINDINGS OF FACT.

The basic facts of this case are not in dispute.

The petitioner, George M. Street, is a physician residing in Vicksburg, Mississippi. His gift tax return for the year 1952 was filed with the director of internal revenue for the district of Mississippi.

On March 25, 1952, petitioner created six irrevocable trusts for the primary benefit of his six following grandchildren who were minors:

| Grandchild | Date of birth | Approximate age at creation of trust |
|---|---|---|
| Marilyn McQueen Eustis | Mar. 22, 1941 | 11 yrs. |
| Joseph Bres Eustis, Jr | Dec. 30, 1942 | 9 yrs. 3 mos. |
| Lucian Minor Ferris, Jr | Mar. 29, 1948 | 4 yrs. |
| Lois Embree Eustis | Jan. 10, 1949 | 3 yrs. 3 mos. |
| Kimberly Ann Ferris | Sept. 22, 1949 | 2 yrs. 6 mos. |
| George Street Eustis | Sept. 19, 1951 | 6 mos. |

The trusts, each for one grandchild, were created by the petitioner by entering into six separate indentures, as between himself as trustor and the First National Bank and Trust Company of Vicksburg, Mississippi, as trustee. Marketable securities of the then total fair market value of $47,455.46 were transferred to the trustee without consideration, to fund all the trusts. The allocation made by the petitioner to the individual trusts was as follows:

| Grandchild | Corpus of trust |
|---|---|
| Marilyn McQueen Eustis | $6,769.39 |
| Joseph Bres Eustis, Jr. | 5,174.94 |
| Lois Embree Eustis | 6,500.00 |
| George Street Eustis | 5,874.44 |
| Lucian Minor Ferris, Jr. | 11,057.81 |
| Kimberly Ann Ferris | 12,078.88 |
| Total | 47,455.46 |

The six indentures for said trusts were identical, except as to the identity of the beneficiary. The indenture of the trust for the grandchild Marilyn McQueen Eustis, which is typical, provided in part as follows:

---

[1] SEC. 1003. NET GIFTS.

  (b) EXCLUSIONS FROM GIFTS.—

  *    *    *    *    *    *    *

  (3) GIFTS AFTER 1942.—In the case of gifts (other than gifts of future interests in property) made to any person by the donor during the calendar year 1943 and subsequent calendar years, the first $3,000 of such gifts to such person shall not, for the purposes of subsection (a), be included in the total amount of gifts made during such year.

(1) This Trust is created irrevocably for the use and benefit of Marilyn McQueen Eustis, born March 22, 1941, granddaughter of the Trustor. The Income, or principal, or both, of the Trust Fund may be used at any time it may be needed for the support, comfort and education of Marilyn McQueen Eustis. Such payments shall be paid to her mother or father, upon the written request of the Trustor during his lifetime. Should the Trustor die before Marilyn McQueen Eustis reaches the age of thirty (30) years, such payment shall be paid to the mother or father of Marilyn McQueen Eustis at the discretion of the Trustee. When Marilyn McQueen Eustis attains the age of twenty-five (25) years, one half of the Trust Fund then remaining, both income and principal, shall be paid over and delivered to her. When Marilyn McQueen Eustis attains the age of thirty (30) years, the entire balance of the Trust Fund then remaining, both income and principal, shall be paid over and delivered to her. * * *

Other provisions of the indenture further provided, in substance and so far as here material, that if the said beneficiary should die before reaching 30 years of age, the balance of the trust fund would be divided equally among the trusts created for her then living brothers and sisters. In the event no brother or sister survived her, the fund would be paid to the mother of the beneficiary if she were then living; or if she were not living, it was to be paid to the lawful heirs of the trustor in accordance with the terms and conditions of the indenture. In 1955 identical amendments for the several trusts were executed, but none of these is relevant to the issue before us.

Up to the time of the trial herein, no income or corpus had been distributed to any beneficiary of the trusts.

The petitioner, in his 1952 gift tax return, claimed six exclusions of $3,000 each (total $18,000) in respect of the six transfers in trust for the benefit of his grandchildren. The petitioner also claimed a specific exemption of $27,609 against the total transfers in trust of $45,609 as valued in his gift tax return. On the basis of these computations by the petitioner, no gift tax liability was reported in his gift tax return for the year 1952.

The respondent, in his notice of deficiency, determined that the claimed exclusions were not allowable, on the ground that the interests of the petitioner's grandchildren were future interests within the meaning of section 1003 (b) of the 1939 Code. Disallowing the exclusions on this basis, the respondent determined that there was a deficiency in gift tax for 1952 of $990.08, after allowing the petitioner a total specific exemption of $30,000. The petitioner petitions for a redetermination of the deficiency.

OPINION.

The question for decision is whether, in determining the petitioner's gift tax liability for the year 1952, there should be allowed, pursuant

to section 1003 (b) of the 1939 Code, an exclusion of $3,000 in respect to each of the six separate trusts created by the petitioner in 1952 for the primary benefit of his six minor grandchildren. The answer to this question will turn on whether the beneficiaries' interests in these trusts were present interests or future interests, within the meaning of said section of the Code.

As stated in our Findings of Fact, the petitioner created six separate irrevocable trusts by transferring to the trustee marketable securities, without consideration, for the funding of such trusts. In each instance, the trust indenture provided that the trust income or principal, or both, were to be used at any time they were needed for the support, comfort, and education of the individual minor beneficiary. Each instrument further provided that such payments for the stated purposes were to be paid to the beneficiary's mother or father upon the written request of the petitioner during his lifetime; or, in the event the petitioner died before the beneficiary became 30 years of age, the payments were to be made to a parent of the beneficiary at the discretion of the trustee. At age 25, one-half of the entire fund then in trust was to be paid over to the beneficiary, with the balance payable when the beneficiary reached age 30. However, if the beneficiary failed to live to age 30, the accumulated income and principal in his trust were to be administered and disposed of for the benefit of others, as provided in the indenture.

The rule governing the nature of the interest of a minor beneficiary in this type of trust was stated by the Supreme Court in the cases of *Fondren* v. *Commissioner*, 324 U. S. 18, and *Commissioner* v. *Disston*, 325 U. S. 442. In the *Fondren* case, the Supreme Court said, at page 21:

if the income of a trust is required to be distributed periodically, as annually, but distribution of the corpus is deferred, the gift of the income is one of a present interest, that of the corpus one *in futuro*. * * * *A fortiori*, if income is to be accumulated and paid over with the corpus at a later time, the entire gift is of a future interest, although upon specified contingency some portion or all of the fund may be paid over earlier. The contingency may be the exercise of the trustee's discretion, either absolute or contingent. It may also be the need of the beneficiary, not existing when the trust or gift takes effect legally, but arising later upon anticipated though unexpected conditions, either to create a duty in the trustee to pay over or to permit him to do so in his discretion.

In the instant case, it is clear upon the face of the instruments that the interest of each beneficiary in the corpus was a future interest. *Fondren* v. *Commissioner, supra.* The rights of the beneficiaries to receive and enjoy such corpus were contingent upon their surviving to the requisite ages, although it was possible that some or all of the corpus might at some earlier time be given to them upon the happening of the specified contingency of need.

Similarly, it is our opinion that the beneficiaries' rights to the income of the trusts were future interests. The beneficiaries were not given the right to immediate present enjoyment of any ascertainable portion of the trust income at the moment of the gift. Rather, their rights were conditioned during minority and afterwards, upon the happening of the contingency of their need, and also upon the discretion of the trustor in deciding whether or not to make written request to the trustee for payment to the parents. Each indenture provided that the income or principal, or both, of the trust fund "may be used at any time it may be needed" for the purposes mentioned; and that "such payments" (as may be needed) should be paid to the beneficiary's mother or father "upon the written request of the Trustor," or if he were not then living, "at the discretion of the Trustee." In such circumstance, the following statement of the Supreme Court in *Commissioner* v. *Disston*, 325 U. S. at 448–449, is applicable:

The * * * provision for payments for maintenance and support may be said to indicate a departure from the policy of accumulation only when necessary, in the reasonable discretion of the trustees. If that is the appropriate interpretation of the trust instruments, then little difference from the Fondren case is involved. Even in its practical working, the trustees did not find the necessary prerequisites for a steady application of all or any ascertainable part of the income for education, support and maintenance.

But, even though the trustees were under a duty to apply the income for support, irrespective of outside sources of revenue, there is always the question how much, if any, of the income can actually be applied for the permitted purposes. The existence of a duty so to apply the income gives no clue to the amount that will be needed for that purpose, or the requirements for maintenance, education and support that were foreseeable at the time the gifts were made. In the absence of some indication from the face of the trust or surrounding circumstances that a steady flow of some ascertainable portion of income to the minor would be required, there is no basis for a conclusion that there is a gift of anything other than for the future. * * *

The petitioner relies principally upon *George W. Perkins*, 27 T. C. 67; *Kieckhefer* v. *Commissioner*, 189 F. 2d 118 (C. A. 7); *Commissioner* v. *Sharp*, 153 F. 2d 163 (C. A. 9); *Munger* v. *United States*, 154 F. Supp. 417 (D. C. Ala.); and *Commissioner* v. *Baker*, 236 F. 2d 317 (C. A. 4). All of these cases involved trust instruments which differ substantially from the instruments here involved. The *Perkins* and *Kieckhefer* cases, *supra*, dealt with trust instruments which gave either the beneficiary, his guardian, or his parents the absolute power to terminate the trust in the beneficiary's favor at any time, thus granting a power to obtain immediate use and enjoyment for the beneficiary. The *Sharp* and *Munger* cases, *supra*, dealt with instruments in which the only discretion given to the trustee was to determine the person to whom the income payments would be made, or the manner or means of distribution. The *Baker* case, *supra*, dealt

with an instrument which specifically provided that the trustee should hold the trust funds as guardian of the beneficiary; and this was regarded by the court to be equivalent to a present gift to the beneficiary. No features such as these are present in the instant case.

We hold that the interests of all beneficiaries in the several trusts here involved were future interests, within the meaning of section 1003 (b) of the 1939 Code; and accordingly, no exclusion under said section is allowable.

*Décision will be entered for the respondent.*