# 𝔚𝔥𝔢𝔢𝔩𝔦𝔫𝔤.

McGuire *et al. v.* Wright *et al.*

Decided November 5, 1881.

*(Patton, J., absent.)

|     |     |
| --- | --- |
| 18  | 507 |
| 35  | 476 |
| 18  | 507 |
| 43  | 160 |
| 43  | 539 |
| 18  | 507 |
| 41  | 317 |
| 18  | 507 |
| 48  | 371 |
| 18  | 507 |
| 50  | 18  |
| 18  | 507 |
| 58  | 329 |
| 18  | 507 |
| 64  | 567 |

1. Where a bill is filed surcharging and falsifying an administrator's account, and the cause is referred to a commissioner for the purpose of having the account corrected, and before the commissioner it is discovered, that the administrator has failed to charge himself with an item properly chargeable against him, and the bill does not notice such item, but there is a thorough investigation before the commissioner of the fact, whether such item is properly chargeable against the administrator, and the administrator takes evidence tending to show, that he is not chargeable with the item, and does not complain of surprise, nor insist upon any specification in writing, nor claim the benefit of an explanation by affidavit or answer, an exception to the report charging him with such item is properly overruled.

2. The word "lease" has a definite legal signification; and a contract in writing selling a "lease" does not carry with it oil, that had theretofore been pumped from an oil-well on the lease so sold.

3. Where there is no ambiguity in a written contract, parol evidence is inadmissible to contradict or vary its terms.

4. Where questions of fact are submitted to a commissioner in chancery, his findings upon such facts should be sustained, unless the court is satisfied from the evidence before the commisioner, that such findings are erroneous; though such report is not entitled to as much weight as the verdict of a jury.

Appeal from and *supersedeas* to a decree of the circuit court of the county of Wood, rendered on the 11th day of October, 1878, in a cause in said court then pending, wherein Emma McGuire and others were plaintiffs, and F. M. Wright and others were defendants, allowed upon the petition of said Wright.

Hon. James M. Jackson, judge of the fifth judicial circuit, rendered the decree appealed from.

The facts of the case are fully stated in the opinion of the Court.

*Submitted before he took his seat upon the bench.

*C. C. Cole* and *W. L. Cole*, for appellant, relied on the fol-authorities:  1 Story Eq. Juris. §§ 524, 525 ; Adams Eq. (6th Am. ed.) 226 s. p.; 4 Munf. 369 ; 19 Gratt. 438 ; 2 Cliff. C. C. 139 ; 6 W. Va. 153 ; 7 Johns. Chy. 69 ; 10 Leigh 434; *Corbin* v. *Mills*, 19 Gratt; 10 W. Va. 321 ; 1 Greenl. Ev. §§ 288, 293, 294, 295, 297.

*John A. Hutchinson*, for appellee, relied on the following authorities:  1 Story Eq. § 525 ; 10 Leigh 434; 9 Johns. 450 ; 3 Munf. 397 ; 24 Gratt. 389 ; 1 Greenl. Ev. § 281 ; 4 Zab. 467 ; 6 Gratt. 644 ; 6 Rand. 525; 7 Leigh 639 ; 3 Call 194 ; 3 H. & M. 416.

Johnson, President, announced the opinion of the Court:

The defendant, F. M. Wright, was duly appointed administrator of the estate of Luke McGuire, deceased. In 1877 he settled his accounts as such administrator before S. C. Shaw, a commissioner of the county court of Wood county, having been appointed as such administrator by the said county court.   In the settlement it appeared, that he was indebted to the estate in the sum of $655.66. In August, 1877, Emma McGuire, the widow of said Luke McGuire, in her own right and as the next friend of her infant children, filed a bill in the circuit court of Wood county to surcharge and falsify said account.   On the 12th day of October, 1877, the bill was taken for confessed as to the defendant, Wright, and a reference was made to a commissioner with leave to the plaintiff to surcharge and falsify the said account.   Before the commissioner upon examination by plaintiffs F. M. Wright showed, that in 1872, Luke McGuire had an interest in an oil-well, which had been pumping oil.   He testified, that the well produced four or five barrels of oil per day for two days, and after that it produced two and a half barrels per day ; that no account had been kept of the oil produced ; and that McGuire had a two thirds interest in the well.   When asked, what was his estimate of the oil produced, he said, that he had never made an estimate of it ; that if he should make one, it would be "wild"; that it commenced pumping about the 18th of June, 1872, and was pumped every day except Sunday. He said the oil was pumped into tanks; and when the tanks were full, the oil was shipped.   The company took its royalty

on shipments. He said: "I presume the books of the Volcano Co., will show shipments; but I don't think there were any shipments, while McGuire was in the well." The question was put to him: "In settling your account and charging $764.66 for two thirds of the tubing and other expenses of the well, as charged in your settlement, did you credit his estate with the amount of oil due him from the well?" Objection is noted as follows: "Objected to, because it assumes there was oil due McGuire from the well, when no such fact has been proven, and the contrary is the fact." He answered: "There was none due; and that is the reason no account was taken of it." The witness produced a memorandum of sale made by McGuire to F. M. Wright, which is as follows:

"1872, August 5. Bo't this 5th day of August 1872 of L. McGuire his entire interest—⅔ interest—in lease No. 72, in *se'tion* C, on *Volcanock* lands in Wood and *Richey countys* W. Va., for the sum of $2,500.00, $500.00 to be in cash, and the balance to be a note of J. P. Ridge, one 60 days for $666.66; one for $666.66, 90 days; one for 120 days for $666.66, making $2,000.00 *dollars,* and the *Sed* Maguire to pay ⅔ of the expenses of boring *sed* well, and tubing, rods, and rig and running expenses to this date, and if said Maguire *dus* not work for *my* to pay said *det* an balance it is agreed to adjust said *clame* when third note is due.

"LUKE MAGUIRE. ·<br>"F. M. WRIGHT."

He admits, that he received the proceeds of shipments of oil; that sometimes he "set down" the proceeds of the shipments of oil, and sometimes he did not.

E. W. Staples, who kept the books of the Volcanic Oil and Coal Company, testified, that the oil produced from lease No. 72, from May, 1872, to August 5, 1872, was four hundred and forty barrels, of which one third was royalty due the said company; and that during that time the oil from that lease was worth $3.30 per barrel. The question was asked him: "Do you know of your own knowledge, how much oil was pumped or produced from the well in controversy, from the time it commenced producing up to the 5th day of August, 1872?" He answered: "My knowledge is from keeping the accounts. At that time it was customary every Saturday to

visit each well. I did the visiting and ascertained from the party in charge the production of the current week. * * * I have a recollection of visiting the well weekly; and the production varied from forty to sixty barrels per week."

There was considerable other testimony as to the production of oil from the well and its value.

The commissioner's charges against defendant, Wright, in his account as to the oil received are as follows: " October 1, 1872, to two thirds of four hundred and forty barrels oil on the lease, August 5, 1872, date of sale, less royalty, two hundred and ninety-three and one half barrels at $3.30, $645.33."

The defendant, Wright, by counsel excepted to this item for various reasons, which will be considered. There were several other exceptions to the report, which are not insisted on here. The court overruled the exceptions to the report, and confirmed it, and decreed against Wright for the amount found due, which was $1,144.51. From this decree Wright appealed.

The counsel for appellant in his brief says: " The principal and perhaps the only controversy here arises upon the appellant's second exception to the report of commisioner Powell relating to the charge of $645.33 for two thirds of four hundred and forty barrels of oil, less royalty, at $3.30 per barrel." It appears, that this item was not in the settlement of the administrator made before the commissioner of the county court, and no mention is made of it in the bill or other pleadings in the cause. The whole controversy here between counsel on both sides is, whether under the pleadings and proof in the cause the said item ought to have been allowed.

The first ground of exception is, that " it is an item by way of surcharge of the account settled by Commissioner Shaw, and the bill does not surcharge the said account in this particular, and there is no reference to it in the pleadings. No evidence can under the state of the pleadings be heard in relation to it. The defendant had no notice of this item, until evidence was introduced before the commissioner, and was surprised by it. No foundation is laid in the bill for the introduction of this testimony. If it were a proper charge against Wright, it could not be allowed under the pleadings, as they now stand." It is true, that as a general rule matters

not charged in the bill or averred in the answer and not in issue in the cause are not proper to be considered upon the hearing ; but in a cause like this, where the parties have had the fullest opportunity for explanation before a commissioner, to whom the cause has been referred to make up the account, the rule does not apply with the same strictness as in other chancery causes, and there are not the same reasons, that it should.

In *Shugart, adm'r* v. *Thompson's adm'r.*, 10 Leigh 434, Stanard, Judge, says: "But the order of account having been made, the parties proceeded with their proofs before the commisioner ; and the facts developed there, if they do not sustain the specific objections to the settlement taken in the bill, and in these respects established a surcharge thereof, ascertain to my satisfaction, that the settlement may be justly surcharged in other respects. This being so, one of two courses might have been taken in the court below. If that court had pursued the strictest and most technical rule of practice, it might have declined to proceed to grant the plaintiff relief in respect to the objections to the settlement shown by the evidence, though not noticed by the bill, unless the plaintiff amended his bill in this respect, and urged those objections as further matter of surcharge and falsification of the account, so as to afford the defendant the benefit of the explanation and defence he might make by his answer to such amended bill. Or dispensing with this circuitous and formal proceeding the court might permit the commissioner to proceed in respect of the matters embraced by the objections so developed, in like manner as if they had been noticed by the bill. My opinion is, that it was within the competency of the court to take the latter course. Such a practice seems to me recommended by many considerations. It is more compendious and less expensive, and tends to prevent and shorten these delays in the administration of justice, which are grievances admitted by all, and by many urged as a reproach to its ministers. Every object of the more formal proceeding, and every privilege of defence it would afford, may be attained under this more summary practice. If the defendant should object, that he is surprised by the new objections to the account, the court may and ought to give him

time to combat them; and if he urges the privilege he would have by answer to an amended bill to explain and defend the account in these respects, that privilege may and ought to be secured to him by allowing time to file his affidavit, containing such explanation and defence, and giving to such affidavit the like credit and effect as his answer containing the like matter would be entitled to."

*Chapman's adm'rs* v. *Shepherd's adm'r et al.*, 24 Gratt. 377, is a case very similar to the one at bar; and the question we are now considering arose in the same manner, by exceptions to the commissioner's report. Staples, Judge, who delivered the opinion of the court, disposed of it so clearly and satisfactorily that I quote his language : " In the progress of the investigation it was discovered, that the executors had omitted to charge themselves with various debts lost by their negligence, and with debts due by one of them to the testator. With the exception of these omitted items the commissioner obtained the principal material for his account from the *ex parte* settlements. The only important change in the settlements consisted in the addition of the omitted debts, and in separating the administration-accounts proper from those of the legatees. The defendants did not complain of any surprise. They did not insist upon any specifications in writing. They did not claim the benefit of an explanation by affidavit or answer. The fullest and most ample investigation was had; and it is very clear, that no injustice has been done in refusing the *ex parte* settlements, and in making the additional charges. Under all these circumstances it will be productive only of expense, delay and trouble to send the cause back for the plaintiff to go through the useless formality of amending his bill by inserting matters already investigated before a commissioner, and in respect to which the defendants have not proposed to make any defence or explanation other than is already made."

Where a bill is filed to surcharge and falsify an administrator's account, and the cause is referred to a commissioner for the purpose of having the account corrected, and before the commissioner it is discovered, that the administrator has failed to charge himself with an item properly chargeable against him, and the bill does not notice such item, but there

is a thorough investigation before the commissioner of the fact, whether such item is properly chargeable against the administrator, and the administrator takes evidence tending to show that he is not chargeable with the item, and does not complain of surprise, nor insist upon any specification in writing, nor claim the benefit of an explanation by affidavit or answer, an exception to the report charging him with such item, because it is not mentioned in the bill, is properly overruled.

In this case there was no surprise to Wright; or he did not complain of any. He made no objection whatever to going into the investigation of whether he was chargeble with the price of the oil; he did not demand any specification in writing of the item of the plaintiffs; he did not claim the benefit of an explanation by affidavit or answer; he took testimony before the commissioner tending to show, that he was not chargeable; and filed his answer to the bill, after the account was made up; and does not say one word about the attempt to hold him chargeable with the oil. Under these circumstances he had no right to complain; and the exception to the report, on the ground that the item was not mentioned in the bill, was properly overruled.

But he further claims, that the oil was included in the sale of the lease, and claims that this is the fair construction of the contract. The word "lease" has a definite legal signification; and a contract in writing selling a "lease" does not carry with it oil, that had theretofore been pumped from an oil-well on the land so leased. But it is claimed, that if the contract will not bear this construction, it is so vague as to allow the introduction of parol testimony to explain it, and show that it was intended thereby to sell the oil, that had been pumped from the well. . The contract is not vague, or ambiguous; and it is well settled, that where there is no ambiguity in a written contract, parol evidence is inadmissible to contradict or vary its terms. *Taylor* v. *Sayre,* 4 Zab. 647; *Bowyer* v. *Martin,* 6 Rand. 525; *Harris* v. *Carson,* 7 Leigh 639; *Watson* v. *Hurt,* 6 Gratt. 644.

But it is further claimed, that if the oil was the property of McGuire, there is no evidence, that it came into Wright's hands as administrator of McGuire. It is claimed, that he was

managing the well as agent for Ridge and took possession of the same in that character; and that Ridge, not Wright, got the possession and benefit of said oil. The contract shows, that the lease was sold to Wright, not to Ridge; and it is shown clearly to my mind, that Wright received the oil, and if he did not, that he ought to have received it as administrator, as he was cognizant of the fact, that the oil belonged to McGuire, as clearly appears from the record.

It is claimed further, that the proof before the commissioner did not justify him in his finding as to either the quantity or value of the oil, as ascertained by him. Where questions of fact are submitted to a commissioner in chancery, his findings upon such facts should be sustained, unless the court is satisfied from the evidence before the commissioner, that such findings are erroneous, though such report is not entitled to as much weight as the verdict of a jury. (*Boyd & Co.* v. *Garrison & Co.*, 14 W. Va. 1). The report of a commissioner as to the facts found will not be set aside except for strong reasons. We have carefully looked into the evidence before the jury, from which he fixed the quantity and price or value of the oil, and we are satisfied these facts justified his report. There are no other exceptions to the report of the commissioner, that are insisted upon here; and we think after an examination of the whole record, that the exceptions to the report were all properly overruled.

The decree of the circuit court is affirmed with costs and damages according to law.

JUDGES HAYMOND AND GREEN CONCURRED.

DECREE AFFIRMED.