CATHERINE OSBORN GOFF *v.* NATHAN GOFF, III

(No. 8931)

Submitted September 17, 1939. Decided October 17, 1939

*Stathers, Stathers & Cantrall* and *Mary Frances Brown,*
for appellant.

*Steptoe & Johnson, Chesney M. Carney,* and *Oscar J.
Andre,* for appellee.

RILEY, JUDGE:

Catherine Osborn Goff instituted in the circuit court of
Harrison County this suit for separate maintenance
against her husband, Nathan Goff, III.

Defendant appeals from three decrees, namely: August
6, 1938, awarding a temporary allowance for the support·
of plaintiff and her two children, in the amount of $350.00
per month and a monthly rental of $60.00; January 9,
1938, making a temporary allowance of $1500.00 to plain-
tiff's attorneys; and March 2, 1939, overruling the de-
fendant's motion to have the case heard finally on bill
and answer.

The parties, each now thirty-two years of age, were
married on September 5, 1928. Two children, aged eight
and five, respectively, and now in plaintiff's custody,
were born to them. Because of domestic differences, the
parties separated on January 6, 1937, the plaintiff and
the two children remaining in the dwelling house. At
the time of separation they entered into a written con-
tract whereby they agreed to live apart until July 1, 1937,
and defendant agreed to pay plaintiff $350.00 per month
and rent for the dwelling house in the amount of $60.00
monthly. When the contract terminated, the parties con-
tinued to live apart. On May 3, 1938, plaintiff brought
this suit, charging abandonment and desertion since July,
1937, and failure to provide suitable support for herself
and the children. Defendant answered, denying these
charges, and alleged that from the termination of the
agreement to date of the answer, a period of ten months,

defendant had paid for the support of plaintiff and the children the sum of $1094.65, in addition to the monthly rental.

The record discloses that since her marriage, plaintiff has acquired property in the amount of $26,500.00, including a debt of $10,000.00 owed to her by the defendant; that as of July 1, 1938, she had savings and checking accounts in the amounts of $3302.51 and $33.84, respectively; and that in addition she has acquired from her family and now owns 9¾ shares of the preferred stock of Osborn Machinery Company, paying an eight per cent annual dividend, and 149-1/3 shares of the common stock thereof, having very little value. Pursuant to the court's order plaintiff reported that her income in 1937 amounted to $3197.04, including cash received from the defendant in the amount of $350.00 per month for five months, and $240.00 per month for three months; and that her total expenditures for that year amounted to $4380.15. She further made and reported a budget for 1938, disclosing a total amount of $5,633.00, including items of $1500.00 for clothing and shoes, $500.00 for travel and recreation, and $600.00 for cash, entertainment, incidentals and miscellaneous expense.

Defendant's answer discloses that he owns a farm in Harrison County consisting of 2149.86 acres, devoted to grazing stock of his own and tenants who from time to time rented a portion of the farm for grazing purposes. This answer further alleges that defendant's properties are worth $246,104.21, consisting of realty amounting to $160,410.00 and personalty of $85,694.21, and that defendant is indebted in excess of $138,048.88. However, the affidavit of Ernest S. Swiger, one of the trustees of the estate of Dr. W. P. Goff, defendant's deceased father, discloses that $68,765.76 of the indebtedness is due to the trustees of said estate, of which defendant is the principal beneficiary. It purports to show that during 1937 defendant had a gross income of $28,587.10 and expenses, including the sums paid to and on account of the plaintiff, in the amount of $45,497.56, making a claimed loss of $16,910.46.

The record is full of charges and counter-charges of the financial mismanagement of both parties. For instance, plaintiff complains of defendant's extravagance in the breeding and showing of purebred Clydesdale horses and in making trips to Canada and the West. Defendant counters that he takes these trips to visit farms in conjunction with his business of raising horses, and only a minimum of expense is incurred in his participation in horse shows. The Swiger affidavit shows that the expenses in 1937 for the horses were: maintenance and equipment, $4,916.12; and stallion expenses, $824.80. The expense of maintaining the farm, according to this affidavit, is listed at $10,743.49.

In seeking to sustain her claim for temporary allowance, plaintiff stresses the fact that when defendant reaches thirty-five and forty years of age, respectively, he will participate in large amounts under his father's will. This will, the record shows, provided for the payment of $10,000.00 annually to decedent's widow and necessary sums for the education, maintenance and support of defendant during his minority. It further provided for a gross sum of $100,000.00 when defendant arrives at twenty-five years, one-third of the trust property at thirty-five years, and the balance on defendant's fortieth birthday. An account of the trustees discloses that as of December 31, 1936, the estate amounted to $1,242,175.54.

It seems unnecessary for us to deal in further detail with the facts contained in this record. In appraising the circuit court's action as to temporary allowance, we have kept in mind that though defendant is not destitute, his present financial condition, in view of his large indebtedness, is decidedly unsettled. Under no condition should the fact that on his thirty-fifth and fortieth birthdays he will receive large sums from his father's estate enter into the question of temporary allowance. Such allowance should be made in conformity with the present needs of the wife and in keeping with the husband's ability to pay. Its award always is within the sound discretion of the trial chancellor, a discretion which is broad indeed. *Wass*

v. *Wass,* 42 W. Va. 460, 26 S. E. 440; *Goff* v. *Goff,* 54 W. Va. 364, 46 S. E. 177; *State* v. *Eddy,* 106 W. Va. 370, 145 S. E. 643; *Blackshere* v. *Blackshere,* 111 W. Va. 213, 218, 161 S. E. 27. This breadth of discretion is based upon the opportunity for future correction and adjustment upon the making of the permanent award. We are satisfied that the trial chancellor's finding as to temporary allowance was not an abuse of discretion. It should, therefore, not be disturbed.

The allowance of $1500.00 to plaintiff's attorneys is also assigned as error. The attorneys' claim is based upon two statements of alleged services rendered from July 5, 1937, to December 12, 1938. During this time suit was instituted, the bill of complaint and answer filed, 121 telephone calls made, 136 conferences had, and 65 miscellaneous items of service performed. Only with caution should a court fix the amount of attorneys' fees *pendente lite.* Until litigation is completed, the result thereof, which is always an important element in the appraisal of attorneys' fees, is withheld from the court's consideration. The court, we think, erred in fixing the attorneys' fees at $1500.00; an allowance of $750.00 in our opinion would be ample at this time.

At June Rules, 1938, this cause was matured and "set for hearing on bill and answer". After the passing of the September term, 1938, and within four days of the adjournment of the January term, 1939, the defendant moved final submission of the case for final decree upon the bill and answer. On the basis of this it is contended that the court erred in not submitting the case as the record then stood. Plaintiff's counsel say, on the other hand, that suits for separate maintenance are governed by our divorce statutes, and therefore cannot be heard simply on bill and answer. It is suggested that because the section of the Code dealing with suits for separate maintenance is contained in the article dealing with divorce (Code, 48-2), the legislature intended that they be governed by the divorce statutes and tried within the statutory limitations governing same. This position, how-

ever, overlooks the history of suits for separate maintenance in this jurisdiction. Prior to the enactment of the Revised Code, such suits were permitted in equity on the age-old doctrine that equity has jurisdiction where there is no adequate remedy at law. Thus in *Lang* v. *Lang,* 70 W. Va. 205, 73 S. E. 716, 38 L. R. A. (N. S.) 950, Ann. Cas. 1913D, 1129, it was held that a court of equity, independently of proceedings for divorce, may decree separate maintenance to a deserted wife and the venue of such suit is governed by the law relating to the place of a suit for the vindication of ordinary legal or equitable rights. Under these circumstances, we think the bare fact that the legislature elected to insert a section, providing for suits for separate maintenance, in the article on divorce, does not destroy the equitable nature of the remedy provided therein, a remedy which already was well known to courts of equity and the bar generally. That being so, it appears to us that Code, 56-6-2, providing for the hearing of chancery causes which have been set for hearing, applies. This section reads: "Before every term of a circuit court * * * the clerk *shall make out a separate docket* of chancery cases in which there are motions, and *of other chancery cases which have been set for hearing as to any party,* * * *; and during such term every cause on such docket shall be called and disposed of.*" (Italics supplied). Code, 56-4-69, provides that if a suit in equity be set for hearing as to any defendant, it shall be heard as to him, unless his interest be so connected with those of other defendants that it would be improper to decide upon their interests separately. And, in 1 Carlin's Hogg's Equity Procedure, sec. 590, it is said: "When a cause is ready for hearing, after being set for hearing, the hearing ought not to be delayed except for good cause."

Under the circumstances, we think that the trial court was justified and should have heard this case upon the bill and answer in the absence of the exercise of due diligence by the plaintiff in the assertion of her rights. The decree overruling the defendant's motion for such hear-

ing very definitely determined substantial rights of these parties. Clearly, it is appealable. Upon the remand of this case, an opportunity should be given to plaintiff to speedily further her cause and prosecute the suit to final decree or suffer its submission upon the record as presently constituted.

We therefore affirm the decree of August 6, 1938, awarding temporary allowance to the plaintiff, reverse the decree of January 9, 1939, making a temporary allowance of attorneys' fees with instructions to modify said decree in accordance with this opinion, and reverse the decree of March 2, 1939, with instructions to hear the case upon bill and answer unless the plaintiff proceeds diligently in the furtherance of her cause.

*Affirmed in part; reversed in part;
modified and remanded.*

On Petition for Rehearing:

It is urged in support of the petition that this court should not have extended to the plaintiff the opportunity to take testimony on the remand, but should have remanded solely for decision on the pleadings under Code, 56-6-2 and 56-4-69. This course was not taken because, until this decision, the question was open whether statutory provisions pertaining to hearing of chancery causes on pleadings are applicable to suits for separate maintenance.