ESTATE OF S. W. ANTHONY, DECEASED, GORDON MORRIS, LES M. HENDERSHOT, AND THE FIRST NATIONAL BANK AND TRUST COMPANY OF TULSA, CO-EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 4288.    Promulgated September 19, 1945.

*Roger S. Randolph, Esq.*, for the petitioners.
*Owen W. Swecker, Esq.*, for the respondent.

OPINION.

Hill, *Judge*: The petitioners ably epitomized the case as follows:

A and K each owned an undivided interest in an oil lease. During 1936 and 1937 all proceeds from the sale of A's oil were impounded by The Texas Company because of a dispute between A and K which resulted in litigation. On April 20, 1937, A irrevocably assigned his interest in the lease and in all impounded income to F. The impounded net income up to April 20, 1937, amounted to $8,822.81. In 1940 the $8,822.81 was released by The Texas Company and paid to F.

*Question*: Is the $8,822.81 taxable in 1940 to A, who is on the cash basis?

Petitioners rely on *Estate of H. H. Timken*, 47 B. T. A. 494; affd., 141 Fed. (2d) 625, as controlling. That case is not in point. In 1931

the decedent there, H. H. Timken, and his two sisters loaned to their brother, W. R. Timken, $3,000,000 in cash and securities and took his promissory note therefor, due one year after date. W. R. Timken did not pay the note at maturity and defaulted on interest payments on and after April 30, 1932. Accrued and unpaid interest amounted to $476,539.87 as of January 1935. On January 24, 1935, the decedent and his sisters, by deed of gift, conveyed their interests in the loan to the Timken Foundation. In December 1936 a compromise settlement of the debt was made between the foundation and W. R. Timken. The Commissioner's contention was that the decedent's share of the accrued interest was taxable income to him in 1935, or else in 1936 and 1937, when the compromise settlement and payments were made. By a divided court, we held that the decedent did not realize taxable income to the extent that the accrued interest was paid, either in 1935, when the gift was made, or in 1936 and 1937, when the interest was paid. W. R. Timken was unable to pay the interest at any time prior to the assignment by decedent. If we consider the tree to be the capital asset which gives rise to the fruit, the tree had there produced no fruit at the time of the gift and was unable to do so. Here, on the other hand, with the oil lease or property considered as the tree, the fruit had been produced and ripened on the tree but was kept from decedent, the then owner of the tree, by an intervening force. The income had already arisen from the property prior to the assignment of both the property and the income. Decedent was the owner of the property when it produced the income. He was prevented from receiving the income only because an intervener, separate and apart from the income-producing property, namely, his creditor Klingensmith, had caused a lien to be placed on the property and the income therefrom in order to ensure the payment of the debt. The assignment of merely the oil lease by decedent would not carry with it the oil or its proceeds produced prior thereto and held for decedent by the Texas Co. as a stakeholder. 2 Thornton, Oil and Gas, 5th Ed., sec. 401. *McGuire* v. *Wright*, 18 W. Va. 507. The decedent was evidently aware of this when he specifically assigned his rights to the impounded income as well as his rights in the oil lease:

* * * the present owner of said lease * * * does hereby * * * assign and convey all right, title and interest of the original lessee and the present owner in and to said lease and rights thereunder, * * * *together with* all of the interest of the said S. W. Anthony in and to the oil produced from said lease-hold estate or the proceeds thereof, or the gas produced from the said leasehold estate, now in the hands of the Texas Company, * * * [Emphasis supplied.]

The entire basis of our opinion in the *Timken* case was that the debtor was unable to pay the interest at the date of the gift. In other

words, the tree itself was unable to produce the fruit. As we there said:

> \* \* \* If by some fortuitous circumstance the debtor becomes able to pay the interest in a later year and pays it, we think that it constitutes income of the donee and not of the donor. \* \* \*

This is far different from the instant case, where the tree has seasonably produced the fruit and it is impounded pending the outcome of a dispute between the owner of the tree and his creditor. When the owner then gives the tree away along with the ripened fruit which is kept from his enjoyment only by a lien placed on it by his creditor, he must be said to have realized income when the lien is removed. The fruit was "as effectively gathered by the owner of the tree as if he had plucked the fruit himself." *Estate of Bertha May Holmes*, 1 T. C. 508. This is fruit produced by the tree in a prior season and stored or impounded for the use of the owner of the tree, either directly or for his use indirectly, in satisfying the claim of his creditor.

Unlike the *Timken* case, the income here was produced and earned by the capital asset while the donor still owned it. The situation may be brought into better focus by considering a hypothetical case wherein the facts are the same except that the donor assigns the impounded earnings to X and the lease to Y. The earnings, having been produced and impounded prior to the gift, can not be attributed to the lease while in the hands of Y. The lease was intact when given to Y, but the fruit of earlier years had already been separated from it. Nor may the earnings be attributed to X, for he does not own the tree. The fruit was produced and earned while the donor owned the tree. As stated in 2 Mertens, Law of Federal Income Taxation (1942), § 18.02, in discussing the rationale of *Helvering* v. *Horst*, 311 U. S. 112:

> \* \* \* It is true that the majority opinion gives lip-service to the distinction previously drawn in earlier cases between an assignment of income and one of corpus but it should be noted that the Court really emphasizes the distinction between income *subsequently earned* on property previously acquired by the assignee, such as rent from a lease or a crop raised on a farm after the leasehold or the farm had been given away, and the separate transfer of the right to interest or wages *previously accrued or earned*, the distinction being premised primarily on the ground that the dominant purpose of the revenue law is the taxation of income to those who earned or otherwise created the right to receive it or to enjoy the benefit of it when paid.

Reviewed by the Court.

*Decision will be entered for respondent.*

----

SMITH, *J.*, dissenting: It seems to me that it is a cardinal principle of the income tax law that a man making his returns on a cash basis is

liable to income tax upon only the income which he receives during the taxable year. Where a man has given away property the donee is taxable upon income which he receives on the gift. In 1937 the petitioner gave to his brother all of his right, title, and interest in and to a certain oil lease, together with impounded royalties. If he received taxable income upon any part of the impounded royalties it seems to me he received that income in 1937—the year of the gift. If satisfaction from the making of the gift is to be treated as income, that satisfaction was realized by S. W. Anthony in 1937. He received nothing in 1940 either in the form of impounded royalties or in satisfaction for his gift. The amount received by the donee in 1940 is not logically the income of the donor. Would it be held that if the donor had died in 1938 and possibly the administration of the estate closed prior to 1940, that the estate derived taxable income in 1940 because it was in that year that the donee collected the impounded royalties? Such a doctrine seems to me to do violence to sound principles of taxation.

It should be noted that in the instant case it was not known in 1937 what the amount of the impounded royalties belonging to S. W. Anthony was. It was not an account settled. No one received income from the impounded royalties until the account was settled, and that was not until 1940.

*Estate of Bertha May Holmes*, 1 T. C. 508 (C. C. A., 2d Cir.; petition for review dismissed Jan. 25, 1945), is cited as authority for the conclusion reached in the majority opinion. There the owner of certain shares in a building and loan association gave the shares away, together with certain credited accumulated dividends thereon, to her son and daughter fifteen days prior to the maturity date of the shares. The accumulated income was received by the donees shortly after the date of the gift and all within the same taxable year. We held that the donor was taxable on so much of the dividends as had been credited to the shares prior to the time of the gift. In support of our decision we cited *Helvering* v. *Horst*, 311 U. S. 112. See also *Helvering* v. *Eubank*, 311 U. S. 122. In the last named case it was held that a person who had earned the right to receive renewal commissions was taxable upon those renewal commissions even though before the date of the receipt of them such person had made a gift of his right to receive them to his wife.

I do not think that *Estate of Bertha May Holmes, supra*, and *Helvering* v. *Horst, supra*, are authority for holding that a donor is taxable upon the income of a gift in a year subsequent to the year of the gift; for the satisfaction for the gift came in the year in which the gift was made. It seems to me also that it is a far cry from the situation presented here to that presented in *Helvering* v. *Eubank, supra;*

for under section 22 (a) of the Internal Revenue Code a man is taxable upon "gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid."

In my opinion the amount received by the donee in 1940 was income taxable to him; it was the fruit garnered by him. Since S. W. Anthony received no part of the impounded royalties in 1940 or any satisfaction in 1940 from the gift made by him in 1937, I think it is error to hold that he is taxable upon any part of the income received by the donee in 1940.

ARUNDELL, *J.*, agrees with this dissent.