IRA SNYDER, COMMITTEE, *etc.*

*v.*

PAUL EDWIN LANE

(No. 10734)

Submitted September 20, 1955. Decided October 25, 1955.

*I. Raymond Murphy, Lycusgus Hyre,* for appellant.

*Young & Coleman, U. G. Young, Jr.,* for appellee.

LOVINS, PRESIDENT:

The plaintiff sues in a representative capacity as a committee for an insane person who is the wife of the defendant, seeking a recovery for maintenance and support of the insane spouse. The Circuit Court of Upshur County denied the plaintiff relief prayed for and dismissed the bill of complaint on the grounds that the plaintiff had failed to sustain his allegations by proof. The trial court however required the defendant to pay the cost of the suit and to pay certain amounts as counsel fees.

The plaintiff prosecutes this appeal and assigns as error: That the trial chancellor erroneously overruled the exceptions to the commissioner's report filed by the plaintiff; that the trial chancellor erred in denying the relief prayed for by the plaintiff, in finding that the defendant failed to sustain his case and in dismissing the bill.

The plaintiff's daughter, Helen Snyder Lane, was married to Paul Edwin Lane on the 19th day of September, 1931. They established their home in Upshur County in rented premises and thereafter they purchased a small farm in their names as owners. One child, Nancy, was born to said marriage on the 19th day of September, 1943.

Helen Snyder Lane and her husband, the defendant, were beset by difficulties and disputes almost throughout their married life. The evidence for the plaintiff shows that the defendant at one time kicked his wife; that he threatened to hit her and was prevented by the brother of his wife; that he threw rocks at her on one occasion. All of these alleged acts of cruelty occurred long prior to their last separation. After the alleged occurrences, Helen Snyder Lane and her husband lived and cohabited together as man and wife for several years. The defendant and his wife went to the home of Ira Snyder, the father of Helen Lane on or about the 18th day of March, 1948. The wife went inside the residence of her father and engaged in a consultation with him while the defendant and his daughter remained in the automobile. At the request of the defendant, his wife came to the door and said she was not ready to go; went back into the house and resumed her consultation with her father. Upon being requested to come to the automobile, she came to the door of her father's home and informed her husband that she would not go with him and did not expect to resume residence in that "hole", evidently referring to her then residence.

There is proof of their disputes and difficulties when the wife of the defendant allegedly broke the headlights on his automobile, took his automobile out and stayed until 1:45 A.M. and on one occasion threw herself in front of the automobile in order to prevent her husband from taking the daughter to his father's home. The defendant denies that he ever offered any violence to his wife and insists in his testimony that all of these occurrences were caused by his wife's temper.

About four months after the 18th day of March, 1948, the wife, upon the advice of a physician, was sent to the Medical Center at Weston, where she remained for approximately six months, after which time she returned home.

Some of the testimony indicates that the wife was suffering from a mental aberration or disturbance prior to the time she was sent to the Medical Center at Weston. Other testimony is to the effect that she was normal on the 18th day of March, 1948, and for some time afterwards. After her return from the Medical Center, the evidence indicates that her mental condition was normal while other testimony tends to show that she was still mentally unbalanced.

The plaintiff claims that he has received some payments decreed against the defendant for maintenance and support of his insane daughter, defendant's wife, but he does not render any accounting as to how much or from what sources he has received same or how much he has expended. He claims in his testimony that he has spent unspecified amounts for refreshments and necessities for his insane ward, although he testified that he has kept certain payments made to him intact.

There are other claims disclosed by the record as to property of the defendant and his wife. It seems that they jointly owned a small tract of land of about 66 acres; that this property has been rented and that the rental, or a part thereof, has been divided equally between the defendant and the plaintiff representing the insane wife. The plaintiff asserts that his daughter owned certain personal property in the home, that however is disputed by the defendant who says that all of the personal property was paid for out of funds belonging to him.

On one occasion, the wife left the home of the defendant and took with her $2000.00 in government bonds and the pass book of her infant daughter. There is mention in the record of one action of detinue brought by the defendant to recover the bonds, the outcome of which is

not clear. At one time the plaintiff says that he received $1003.68 which belonged to him by way of a compromise. On this phase the record is not clear. There is also proof that Helen Snyder Lane withdrew the balance in her daughter's savings account amounting to $150.00; signed the withdrawal order, Nancy Carol Lane by Helen Snyder Lane, and surrendered the pass book.

The commissioner to whom this cause was referred found for the defendant, filed a report of his findings to the effect that the farm owned by the plaintiff and his insane wife is owned jointly by them and was being rented for $20.00 a month; that the defendant, Paul Edwin Lane, has some of the household goods at his parents home and that the plaintiff, as a committee, has in his possession deposits in the bank in the sum of $363.53, which he claims is the proceeds of the rental received by him since he took over his ward's estate.

The commissioner further reported that not considering the temporary maintenance money, the income of the insane wife is ten dollars per month. The defendant likewise received such amount. The defendant is now working at Chester, Pennsylvania, receiving $12.88 per day and is working five days a week; that he supports his daughter Nancy and his mother who live with him in a trailer owned by his parents. The commissioner further reports that the character and conduct of the plaintiff and defendant are good; that the health of the defendant is good and that the health of the insane wife during the past six years has been bad. The com· missioner's report finds that there are serious charges in the bill of complaint against the defendant, but that there was no proof of the serious allegations and charges against him.

The defendant's wife was adjudged insane and committed to the Weston State Hospital during the summer of 1949, where she now remains.

During the time the defendant and his wife lived to-

gether, she brought two suits for divorce which were dismissed on her motion.

The plaintiff excepted to the report on the ground: (1) That the commissioner was in error in finding that the wife of the defendant left him of her own accord in March, 1948; (2) in finding that the defendant had not abandoned and deserted his wife; (3) in finding that the evidence was not sufficient to support the charge that the defendant abandoned his wife on or about March 18, 1948; (4) that it was erroneous finding by the commissioner in determining that the defendant was not cruel to his wife. All the exceptions were overruled and the trial chancellor entered a decree as above stated.

This appeal presents two factual questions: (1) Did the insane wife leave the defendant for cause, and (2) was she so incompetent mentally as to render her irrational and irresponsible for her action in separating from her husband?

It is to be noted that there is conflict between the allegations in the bill of complaint and the allegations in the answer of the defendant. Likewise, the testimony adduced by them is in conflict, and the commissioner to whom this cause was referred has resolved such conflicts in favor of the defendant.

This suit is for separate maintenance under the provisions of Section 29, Chapter 35, Acts of the Legislature of 1935, the pertinent portion which reads as follows: "Whenever a husband shall, without good and sufficient cause, have failed to provide suitable support for his wife, or have abandoned or deserted her, or if the wife, for such cause as would entitle her to a divorce, is actually living apart from her husband, and such husband is in either case of sufficient ability to support his wife, the circuit court of any county that would have jurisdiction of a suit for divorce between the parties, shall, at the suit of the wife, in chancery, whether or not a divorce be prayed for, decree to the wife as alimony and separate

maintenance such sum out the husband's earnings and income as the court may determine, * * * ".

The portion of the statute above quoted is declaratory of the principles which have been enunciated in the cases decided prior to its enactment. See Revisors Note to Code, 48-2-29. *Davis* v. *Davis*, 137 W. Va. 213, 70 S. E. 2d 889; *Goff* v. *Goff*, 121 W. Va. 479, 5 S. E. 2d 735; *Wolford* v. *Wolford*, 133 W. Va. 403, 56 S. E. 2d 614; *Snyder* v. *Lane*, 135 W. Va. 887, 65 S. E. 2d 483. *Snyder* v. *Lane, supra*, was heard on a certified question as to the sufficiency of the bill. The allegations of the bill of complaint were appraised upon a demurrer. It was held: "The committee of an insane wife, to whom a right to separate maintenance and support from her husband has accrued before she became insane, may maintain a suit in equity in her behalf against her husband to require him to maintain and support her, even though the wife is a patient in a state hospital and there receives medical treatment and hospital care at the time such suit is instituted." See *Snyder* v. *Lane, supra*, for statement of facts disclosed by the bill.

As to the duty of the husband to maintain and support his wife while the marital relations exist, see *Snyder* v. *Lane, supra; Vickers* v. *Vickers*, 89 W. Va. 236, 109 S. E. 234; *Clifton* v. *Clifton*, 83 W. Va. 149, 98 S. E. 72. But the husband may perform that duty in his own way or method. *Dept. Co.* v. *Lilly*, 105 W. Va. 126, 141 S. E. 629.

Aside from the foregoing, the trend of decisions in this jurisdiction prior to the enactment of the statute above quoted imposed such duty on the husband. That duty, according to the expressions in the opinions establishing that duty, as well as the statute, seems to condition the liability of the husband for support and maintenance upon the fact that the wife is without fault.

After the reversal of the trial court in *Snyder* v. *Lane, supra*, the cause was heard upon a decree of reference

to a commissioner who heard oral testimony. The commissioner reported adversely to the plaintiff; that he had failed to establish his case. Exceptions were filed to such report, but the trial chancellor overruled the exceptions and approved the report.

"The findings of a commissioner in chancery, on question of fact, should generally be sustained, unless plainly not warranted by any reasonable view of the evidence, and this rule is entitled to peculiar force in an appellate court when such findings have been sustained by the decree appealed from." *Darby* v. *Morrison,* 112 W. Va. 167, 163 S. E. 819; *Browning* v. *Browning,* 108 W. Va. 81, 150 S. E. 233; *Baker* v. *Jackson,* 65 W. Va. 282, 64 S. E. 32; *Graham* v. *Graham,* 21 W. Va. 698. But if a court is satisfied from the evidence taken before a commissioner that his findings are erroneous, they should be reversed, such report not being entitled to the weight as a verdict of the jury. *McGuire et al.* v. *Wright, et al.* 18 W. Va. 507.

Another principle related to the question here considered is well established in this jurisdiction. A finding of fact by a trial chancellor in a divorce suit will not be reversed on appeal unless it is clearly wrong or against the preponderance of the evidence. *Taylor* v. *Taylor,* 128 W. Va. 198, 36 S. E. 2d 601; *Sutton* v. *Sutton,* 128 W. Va. 290, 36 S. E. 2d 608; *Hurley* v. *Hurley,* 127 W. Va. 744, 34 S. E. 2d 465; *Crouch* v. *Crouch,* 124 W. Va. 331, 334, 20 S. E. 2d 169. The principle above adverted to with respect to a finding of fact in a divorce case has been applied in other cases. See *Smith* v. *Yoke,* 27 W. Va. 639; *Kincaid* v. *Evans,* 106 W. Va. 605, 146 S. E. 620; *Spradling* v. *Spradling,* 118 W. Va. 308, 190 S. E. 537; *Shipper* v. *Downey,* 119 W. Va. 591, 197 S. E. 355; *Pickens* v. *O'Hara,* 120 W. Va. 751, 200 S. E. 746.

The finding of the trial chancellor in this case approved the report of the commissioner. Testimony was adduced before the commissioner showing alleged cruel treatment by the husband prior to March 18, 1948. Two

divorce suits were instituted by the wife prior to that time. The wife of the defendant and the defendant seem to have resumed marital relations after the alleged offenses which would lead to a conclusion that the offenses of the defendant, if any, had been forgiven. *Currence* v. *Currence*, 123 W. Va. 599, 18 S. E. 2d 656. But notwithstanding that condition, a further inquiry develops. Was the wife sane at the time she deserted the defendant? If she was, she would be fully responsible for her actions and if she deserted the defendant without reason, she would be at fault. If she was insane at that time, she would not be responsible for her actions and it would not discharge the husband from the duty to support and maintain her. The evidence as to her sanity at the time they separated is somewhat vague and conflicting, although there is testimony showing that she was in full possesion of her mental faculties.

It is not unreasonable to say that the wife of the defendant was sane at the time she refused to go home with the defendant on March 18, 1948, though she later suffered mental disorder and was sent to the Medical Center. The record does not establish that the defendant's wife, after March 18, 1948, offered to return to him and resume marital relations. Nor is there any evidence showing that the defendant's wife, after her discharge from the Medical Center made any attempt to resume marital relations with her husband.

Except in the case of a testator in a will, a person is presumed to be sane in the absence of adjudication or finding to the contrary and the burden of proving insanity is upon the party alleging it. *Hiett* v. *Shull*, 36 W. Va. 563, 15 S. E. 146. No such adjudication was made until sometime after the wife returned from the Medical Center, nor is there satisfactory proof that she was insane.

From this, bearing in mind the force to be accorded a finding of fact by a commissioner which has been approved by a trial chancellor, as well as the respect

to which the finding of a trial chancellor is entitled, we reach the conclusion that the wife of the defendant was sane at the time she separated from him on the 18th day of March, 1948, and was likewise sane for some time after she returned from the Medical Center and before she was adjudged insane.

In accordance with the foregoing, the decree of the Circuit Court of Upshur County is affirmed.

*Affirmed.*