George D. RANDOLPH, Jr., Appellant,

v.

DISTRICT OF COLUMBIA, a municipal corporation, and District of Columbia ex rel. Mittie Randolph, Appellees.

No. 7375.

District of Columbia Court of Appeals.

Argued April 24, 1974.

Decided Feb. 26, 1975.

Maurine H. Abernathy, Washington, D. C., for appellant.

Earl A. Gershenow, Asst. Corp. Counsel, Washington, D.C., with whom C. Francis Murphy, Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, Washington, D.C., were on the brief, for appellees.

Before KELLY, FICKLING and YEAGLEY, Associate Judges.

PER CURIAM:

■ Pursuant to the provisions of D.C. Code 1973, § 3–218, the District of Columbia brought suit against George D. Randolph, Jr. for reimbursement of public assistance payments in the sum of $3,926.42 made by the District for the support of Mittie Randolph, his wife, from December 17, 1970 through November of 1972, and, in addition, for periodic contributions towards Mrs. Randolph's future support. The trial court permitted the District to recover $981 in accrued public assistance payments and ordered Randolph to make a weekly contribution of $15.00 towards future payments as well. Randolph appeals. Finding that the trial court erroneously failed to consider evidence that the appellant's duty to support his wife had been eradicated by his wife's adultery and unjustifiable desertion from the appellant and their infant son prior to her commitment to St. Elizabeths Hospital, we reverse the order of the trial court.

The record shows that by order dated September 21, 1954, the United States District Court for the District of Columbia adjudicated Mrs. Mittie M. Randolph of unsound mind and committed her to St. Elizabeths Hospital until such time as she might be safely discharged therefrom.

Years later, in December of 1970, Mrs. Randolph was released by the hospital and placed in a foster home where she lived during the months here in dispute supported by public assistance payments from the District of Columbia.

The District filed its suit against Randolph on June 9, 1972.[1] It then sent Randolph a letter which informed him of the civil complaint filed against him and requested that he come to the office of the Corporation Counsel at 601 Indiana Avenue, N.W., to discuss the case. After Randolph had appeared at that office as requested and had learned the basis of the District's claim, he was served with process by a deputy United States Marshal. Before service, Randolph was told of his right to retain counsel and that he did not have to accept service in that office. The trial court later found at a hearing on Randolph's motion to quash service of process that he had willingly and knowingly accepted service of the complaint.[2]

In answer to the complaint Randolph admitted the marriage, but denied liability for any part of the accrued public assistance payments made by the District on behalf of his wife and his financial ability to make any contribution to his wife's support. He also submitted by affidavit a financial statement which listed a weekly take-home pay of $106.93 and expenses of $107.25.

At trial, Randolph testified that he and Mrs. Randolph were married on January 31, 1952, and lived together until the summer of 1954 when she deserted him because, as she said, "she was in love with another man . . . ." The trial court excluded further testimony relating to the circumstances of the Randolph separation

1. The original complaint sought reimbursement for $2,708.22 in public assistance payments from December 17, 1970 through April 30, 1972. It was later amended to include an additional claim of $1,218.20 for payments from April 30, 1972 through November of 1972.

2. The trial court did note, however, and we agree, that the better practice would be for the government to effect service of process in the normal manner. The government claims that such service is made, without any coercion, as a matter of convenience to persons who wish to avoid the embarrassment of being served at work or at home.

in the belief that it was irrelevant to the proceedings. In the appellant's answer to the original complaint and in an affidavit submitted with a post-trial memorandum, however, it was also asserted that Mrs. Randolph claimed to be pregnant by the lover for whom she left Mr. Randolph; that Mrs. Randolph refused to have anything to do with her husband or son after her desertion; that the appellant has not been in contact with his wife for eighteen years; and that he has been forced to raise their son, now 19, by himself. Mr. Randolph also testified that he had not sought a divorce during the 18 years of separation because he had been advised that divorce was impossible as long as his wife was a patient at St. Elizabeths Hospital. He did not contribute to his wife's support during her commitment to St. Elizabeths because the District Court order committing Mrs. Randolph expressly provided that

> [t]he expense of the maintenance and treatment of Mittie Mae Randolph in St. Elizabeths Hospital shall be borne by the District of Columbia without prejudice to its right to claim reimbursement in full from the estate of the patient, or others, as provided by law.

Nor was Mr. Randolph notified when his wife was transferred from St. Elizabeths to a "foster home", the action which the District claims nullified the effect of the commitment order provision set out above.[3]

In its case the District put on its proof of past and present public assistance payments made on Mrs. Randoph's behalf. The court took the matter under advisement and, after receipt of legal memoranda, ultimately found Randolph liable to the District. It held, however, that a judgment in excess of $981.60 for accrued pub-

lic assistance payments [one-quarter of the amount due] would impose an unreasonable hardship upon him and that it was reasonable to require Randolph to contribute only $15.00 a week towards the cost of his wife's future maintenance ($170.00 per month). An order was entered consistent with these findings.[4]

The statute in question, D.C.Code 1973, § 3–218, provides:

> Responsible relatives.
>
> (a) Responsible relatives for any applicant or recipient of public assistance shall be limited to spouse for spouse and parent for a child under the age of twenty-one, and their financial responsibility shall be based upon their ability to pay. Any such applicant or recipient of public assistance or person in need thereof, or the Commissioner of the District of Columbia, may bring an action to require such financially responsible spouse or parent to provide such support, and the court shall have the power to make orders requiring such spouse or parent to pay such eligible applicant or recipient of public assistance such sum or sums of money in such installments as the court in its discretion may direct, and such orders may be enforced in the same manner as orders for alimony.
>
> (b) The Commissioner is authorized on behalf of the District to sue such spouse or parent for the amount of public assistance granted to such recipient under this chapter or under any Act repealed by this chapter, or for so much thereof as such spouse or parent is reasonably able to pay.
>
> (c) All suits, actions, and court proceedings under this section shall be brought in the Domestic Relations

---

3. At some point Mr. Randolph's son did inform him of the transfer but we could not expect Mr. Randolph to understand that this change might subject him to liability.

4. A change in the law, whereby the "Aid to the Disabled" program under D.C.Code 1973,

§ 3–201 et seq., was transferred to the Social Security Administration, has the effect of relieving Randolph of any liability for weekly support payments after January 1, 1974. 42 U.S.C.A. § 1381 et seq. (Supp. 1974).

Branch of the District of Columbia Court of General Sessions [now the Family Division of the Superior Court of the District of Columbia], or in that court division which may subsequently exercise the jurisdiction exercised by the Domestic Relations Branch on the effective date of this Act. To the extent applicable, suits, actions, and proceedings brought pursuant to this section shall be governed by the provisions of the Act approved April 11, 1956 (70 Stat. 111), as such Act may from time to time be amended or superseded.

█ Randolph nevertheless questions the District's authority to sue him in the Superior Court of the District of Columbia, arguing that because Mrs. Randolph's original commitment to St. Elizabeths Hospital was by order of the United States District Court, jurisdiction over any claim for contribution to her support remains in that court. We would agree with this contention insofar as it pertains to a claim under Section 21–586 of the Code for payments made while Mrs. Randolph remained at St. Elizabeths Hospital, but think it incorrect in regard to a claim by the District for reimbursement of public assistance payments made for Mrs. Randolph's room and board in a foster home. As to these latter payments, as appears above, Section 3–218(c) of the Code specifically vests jurisdiction in the Family Division of the Superior Court.

█ Randolph also contends that he was lured into the office of the Assistant Corporation Counsel and tricked into accepting service of the complaint against him. But again, as noted above, the trial judge who took evidence on this issue specifically found that Randolph knowingly and willingly accepted service of the complaint against him and since this finding has

clear support in the evidence it will not be disturbed on appeal.[5]

██ We now turn to the question of whether a citizen's obligation under D.C. Code 1973, § 3–218, to pay for the public assistance received by a spouse is terminated when the recipient spouse has previously deserted the marital abode under circumstances which would justify divorce. While a husband had a duty at common law to support his wife, that duty was abrogated when the wife engaged in conduct inimical to the marriage relationship. As we recently stated in Roberson v. Roberson, D.C.App., 297 A.2d 769, 770 (1972):

> It is well established now that when a wife leaves the marital abode without just cause, her desertion is a bar to a claim for separate maintenance. *See* Lee v. Lee, D.C.App., 267 A.2d 824 (1970) . . . .

A husband's liability for necessaries provided for his wife's support by third parties has similarly been held to dissolve when the wife unjustifiably deserts her spouse. Maschauer v. Downs, 53 App.D.C. 142, 289 F. 540 (1923); Dudley v. Montgomery Ward & Co., 255 Md. 247, 257 A. 2d 437 (1969).

█ The precise issue facing us, then, is whether Congress intended for § 3–218 to eliminate the common-law defenses to the liability for the support of one's spouse and to impose instead an absolute liability of support for spouses who receive public assistance, limited only by financial ability to pay. We do not believe that Congress intended such a harsh result and that by using the term "responsible relatives" in § 3–218 it was intended that the common-law equitable defenses would be incorporated into the statute. Had this case been an action for separate maintenance or an action

5. Hart v. Cherner, D.C.Mun.App., 178 A.2d 919, 920 (1962). Because counsel was, in effect, allowed to appear specially at the hearing on the motion to quash, we need not discuss the contention that a court order of

August 14, 1972, which purported to grant a continuance to file an answer herein, contained incorrect statements which the trial judge refused to amend to conform to fact.

for reimbursement for necessaries provided to a spouse by a third person, the trial court would have been bound to consider the fact that prior to the time the alleged liability arose the claiming spouse had deserted the marital abode in love with and pregnant by another man. We think the same should be true in a § 3–218 action.

Precisely this same issue was presented to a local Pennsylvania court in In re Miner Estate, 11 Cumb. 82 (Franklin Co.Ct. Pa.1960). Adopting the findings of the court auditor that the husband's spouse had deserted him five years before her commitment to a mental institution and committed adultery approximately one year before her commitment, the court found that the husband's estate was not liable to Pennsylvania for the expense of institutionalizing his insane wife. The *Miner* court refused to interpret literally a Pennsylvania statute which ostensibly placed absolute liability on a spouse for the expense of institutionalization of an insane spouse; instead the common-law principle which abrogates the husband's duty of support where the wife is guilty of conduct which would support a divorce was read into the statute. In so holding, the court stated:

> To force a husband or, in this instance, the estate of a husband to lay out substantial sums of money for the support of a spouse who has, according to the comprehension of all civilized humanity, and under the existing laws of this and most Commonwealths, engaged in conduct wholly inimical to the martial [*sic*] relation shocks the conscience of this court. We do not think for a minute the legislature intended such a result. The context of the statute does not undertake, nor does its title do so, to make any incursions upon the general law of marital obligations. We can think of nothing more reasonable than that the legislature intended for the statute to be laid alongside the pre-existing law dealing generally with the husband and wife relation with the intent that the two be construed in relation to each other rath-

er than in compartmented isolation. [11 Cumb. at 85–86.]

■ Having determined that equitable defenses may be asserted against a liability claim under § 3–218, the question of whether such defenses exist in this case still remains. It is undisputed, however, that Mrs. Randolph had deserted the marital abode at the time of her commitment and that Mr. Randolph appeared at the commitment hearing only in response to a subpoena. The fact of desertion raises a presumption of wrongful desertion and the District will have the burden of rebutting this presumption by establishing either that the separation was by mutual consent or the fault of Mr. Randolph. Maschauer v. Downs, *supra*, 53 App.D.C. at 144, 289 F. at 542; 41 C.J.S. Husband and Wife § 52 (1944). More vexing is the question of whether Mrs. Randolph was sane and responsible for her actions at the time of her desertion. Here again it is presumed that Mrs. Randolph was sane unless the District can establish her insanity because one is presumed sane until adjudicated otherwise. Snyder v. Lane, 141 W.Va. 195, 89 S.E.2d 607, 611 (1955). In *Snyder* a father, as representative of his daughter who had been committed to a mental institution, sued his daughter's husband for support. The court there found that the husband was not liable for support because his wife had previously deserted him and their young daughter. The presumption of sanity was applied to the wife's actions despite the fact that four months after the separation she entered a mental institution upon the advice of a physician and, after being released for a time, was subsequently committed permanently as insane.

While we realize that it is necessary to remand this case to the trial court in order that the appropriate findings of fact can be made, we hope that this can be accomplished as expeditiously as possible; otherwise Mr. Randolph's legal expense may run as high as his potential liability to the District. As the case stands at present, Mr. Randolph's allegations of unjustifiable de-

sertion stand undisputed and his wife is presumed to have been sane at that time. Unless the District can come forth at trial with substantial evidence to the contrary, judgment should be entered in favor of the appellant.

Reversed and remanded for further proceedings in accordance with this opinion.